Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/21/2018 09:09 AM CDT

BARBARA F. HOTZ, APPELLEE, V.
JAMES P. HOTZ, APPELLANT.
___ N.W.2d ___

Filed September 21, 2018.    No. S-17-1152.

1. **Modification of Decree: Child Support: Appeal and Error.**
   Modification of child support is entrusted to the discretion of the trial
   court. An appellate court reviews proceedings for modification of child
   support de novo on the record and will affirm the judgment of the trial
   court absent an abuse of discretion.
2. **Evidence: Appeal and Error.** In a review de novo on the record, an
   appellate court reappraises the evidence as presented by the record and
   reaches its own independent conclusions with respect to the matters
   at issue.
3. **Judgments: Words and Phrases.** A judicial abuse of discretion
   requires that the reasons or rulings of the trial court be clearly unten-
   able insofar as they unfairly deprive a litigant of a substantial right and
   a just result.
4. **Child Support: Rules of the Supreme Court.** Interpretation of the
   Nebraska Child Support Guidelines presents a question of law.
5. **Judgments: Appeal and Error.** When reviewing questions of law,
   an appellate court resolves the questions independently of the lower
   court's conclusions.
6. **Statutes: Rules of the Supreme Court.** For purposes of construction,
   Nebraska Supreme Court rules are treated like statutes.
7. ____: ____. Absent a statutory indication to the contrary, language
   contained in a Nebraska Supreme Court rule is to be given its plain and
   ordinary meaning.
8. ____: ____. Just as statutes relating to the same subject are in pari mate-
   ria and should be construed together, Nebraska Supreme Court rules
   should be read and construed together.
9. **Rules of the Supreme Court.** A court must attempt to give effect
   to all parts of a Nebraska Supreme Court rule, and if it can be

avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.

10. **Rules of the Supreme Court: Appeal and Error.** An appellate court should try to avoid, if possible, the construction of a Nebraska Supreme Court rule that would lead to an absurd result.

11. **Child Support: Alimony: Rules of the Supreme Court.** The Nebraska Child Support Guidelines exclude alimony between parents from their total monthly incomes for the purpose of calculating child support obligations for their children in modification proceedings.

12. **Child Support: Rules of the Supreme Court.** In general, child support payments should be set according to the Nebraska Child Support Guidelines.

13. ____: ____. A court may deviate from the Nebraska Child Support Guidelines if their application in an individual case would be unjust or inappropriate; the court must specifically find that a deviation is warranted based on the evidence and state the reason for the deviation in the decree.

14. ____: ____. A deviation from the Nebraska Child Support Guidelines without a clearly articulated justification is an abuse of discretion.

15. ____: ____. Deviations from the Nebraska Child Support Guidelines must take into consideration the best interests of the child or children.

16. **Modification of Decree: Child Support: Proof.** A party seeking to modify a child support order must show a material change in circumstances that (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered.

Appeal from the District Court for Lincoln County: RICHARD A. BIRCH, Judge. Affirmed.

Kent A. Schroeder, of Ross, Schroeder & George, L.L.C., for appellant.

R. Bradley Dawson, of Lindemeier & Dawson, for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FUNKE, J.

The district court dissolved the marriage of Barbara F. Hotz and James P. Hotz, split custody of their three minor children; ordered James to pay child support until the parties' oldest

child, Josee Hotz, reached the age of majority; and awarded alimony to Barbara. Barbara later moved to modify the amount of child support James paid, alleging James' income had materially increased. The court declined to include James' alimony payments to Barbara in its calculation of the parties' total monthly income for the purpose of recalculating child support obligations. The court also rejected other arguments from James regarding the calculation of the parties' total monthly income and abated part of Barbara's child support obligations after Josee reaches the age of majority.

We hold that the Nebraska Child Support Guidelines (NCSG) exclude alimony between parents from their total monthly income for the purpose of calculating child support obligations for their children. Further, we find that the court did not abuse its discretion in calculating the parties' child support obligations or abating Barbara's child support payments. Therefore, we affirm.

## I. BACKGROUND

In 2015, the court entered a decree dissolving the marriage of Barbara and James and awarding custody of their three minor children. The court awarded Barbara custody of Josee and James custody of their other two children. The court ordered James to pay Barbara $253 per month in child support until Josee reached the age of majority, and then Barbara to pay James $302 per month for two children and $244 per month for one child. Further, the court ordered James to pay Barbara $750 per month in alimony for 70 months.

In 2016, Barbara filed a complaint to modify the decree, seeking a change in custody, child support, and alimony. Concerning alimony and child support, the complaint alleged that James' income had increased and that the change would increase the support paid by him by more than 10 percent. At trial, the parties testified about and produced evidence of their current employment and income.

Barbara testified that she has a part-time job with a hospital service company and a part-time job at a livestock company,

working 1 day per work at each job. The evidence showed that she works about 8 hours per week, at a rate of $15.47 an hour, for the hospital service and that her monthly income from the livestock company is about $400. She also testified that she owns rental homes that are not currently income producing and runs a corporation that operates at a loss. James submitted Barbara's Social Security statement into evidence, which shows her annual earnings for the purposes of Social Security taxes. James testified that his earning capacity had decreased since the divorce decree. He submitted into evidence his personal and S corporation income tax returns from 2016.

Each party presented a demonstrative exhibit of proposed child support calculations. James calculated his gross monthly income at $3,116 and Barbara's at $3,431. Barbara calculated her gross monthly income at $1,560 and James' at $5,794. She calculated her income as $9 per hour for a 40-hour workweek.

The court accepted Barbara's calculation of James' total monthly income and determined Barbara's total monthly income based upon an earning capacity of $1,784, finding she could work 8 hours per week at $15.47 per hour and 32 hours per week at $9 per hour. The court modified its support order to require James to pay Barbara $156 per month in child support until Josee reaches the age of majority, and then Barbara to pay James $424 per month for two children and $292 per month for one child.

Both parties filed a motion to alter or amend the decision. The court denied James' motion. It ruled that it had correctly disregarded James' claimed depreciations, under Neb. Ct. R. § 4-204 (rev. 2016), and that the NCSG does not allow for the inclusion of alimony as income in child support calculations on a complaint to modify. It reasoned that Neb. Ct. R. § 4-213, read in conjunction with § 4-204, excludes alimony from total monthly income.

The court, in part, granted Barbara's motion, requesting an adjustment of her child support obligation when the parties had alternating weeks of custody, by granting an 80-percent

abatement of her obligation during the months of June, July, and August. It reasoned that the abatement was warranted because James' total monthly income is substantially higher than Barbara's and, during those months, Barbara will have equal days of custody, whereas James otherwise has full custody of the children after Josee reaches the age of majority.

James filed an appeal, and we granted his motion to bypass the Nebraska Court of Appeals.

## II. ASSIGNMENTS OF ERROR

James assigns, restated and consolidated, that the district court abused its discretion in (1) failing to accurately calculate the parties' child support obligations; (2) failing to include alimony payments in the calculation of the parties' total monthly incomes; (3) calculating Barbara's earning capacity; (4) finding James failed to prove he was entitled to depreciation deductions; and (5) abating Barbara's child support obligation by 80 percent for the months of June, July, and August.

## III. STANDARD OF REVIEW

[1] Modification of child support is entrusted to the discretion of the trial court.[1] An appellate court reviews proceedings for modification of child support de novo on the record and will affirm the judgment of the trial court absent an abuse of discretion.[2]

[2,3] In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue.[3] A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result.[4]

---

[1] *Schwarz v. Schwarz*, 289 Neb. 960, 857 N.W.2d 802 (2015).

[2] *Id.*

[3] *Connolly v. Connolly*, 299 Neb. 103, 907 N.W.2d 693 (2018).

[4] *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018).

[4,5] Interpretation of the NCSG presents a question of law.[5] When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.[6]

## IV. ANALYSIS

### 1. Court Did Not Abuse Discretion in Calculating Child Support Obligations

James does not argue that the court erred in finding that a material change in circumstances warranting a modification of child support obligations has occurred. Instead, he challenges only specific findings of the court regarding the parties' total monthly incomes for the purpose of calculating their new child support obligations. Specifically, he argues that the court should have considered his alimony obligation to Barbara in calculating the parties' incomes, deducted his depreciations, and calculated Barbara's earning capacity at the hourly rate of her current employment.

### (a) Alimony Obligation Between Parents Is Excluded From Calculating Total Monthly Income for Determining Child Support Obligations Between Them

James concedes that the NCSG and Nebraska case law establish that alimony payments cannot be included in the calculation of child support during the initial decree, because alimony is calculated after child support. However, he asserts that alimony payments are required to be included in the calculation of total monthly income, under Neb. Ct. R. § 4-201 and § 4-204, in modification proceedings, because alimony

---

[5] *Schwarz, supra* note 1.

[6] *Cullinane v. Beverly Enters.-Neb.*, 300 Neb. 210, 912 N.W.2d 774 (2018).

payments are not specifically excluded. He also argues that such an interpretation would be more consistent with the way other states with the same model for calculating child support treat alimony payments in calculating child support obligations.

Barbara responds that § 4-213 requires that alimony payments not be included in child support calculations.

The main principle behind the NCSG is to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes.[7] Section 4-204 of the NCSG, titled "Total monthly income" provides:

> This is income of both parties derived from all sources, except all means-tested public assistance benefits which includes any earned income tax credit and payments received for children of prior marriages. . . .
>
> . . . .
>
> If applicable, earning capacity may be considered in lieu of a parent's actual, present income . . . . Earning capacity is not limited to wage-earning capacity, but includes moneys available from all sources.

We have stated that the "[NCSG is] very specific—all income from all sources is to be included except for those incomes specifically excluded."[8]

Section 4-213 states that the "[NCSG] intend[s] that spousal support be determined from income available to the parties after child support has been established." As James acknowledges, this court and the Court of Appeals have previously interpreted the interaction of these rules.

In *Gallner v. Hoffman*,[9] this court ordered a husband to pay alimony and child support to his wife, and after the alimony

---

[7] *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004); § 4-201.

[8] *Simpson v. Simpson*, 275 Neb. 152, 156, 744 N.W.2d 710, 714 (2008).

[9] *Gallner v. Hoffman*, 264 Neb. 995, 653 N.W.2d 838 (2002).

obligation had expired, the former husband moved to modify his child support obligation. The trial court denied the motion, finding the former wife's current income, while higher than when the decree was entered, was substantially the same as her previous income plus alimony. On appeal, we held that the trial court erroneously interpreted the NCSG by treating the former wife's prior receipt of alimony as an item of income in its assessment of the child support obligation.

We reasoned that the clear language of the NCSG, paragraph M, the precursor to § 4-213, provided that child support obligations are to be calculated prior to the calculation of alimony, so alimony could not be factored into income before the alimony was determined.[10] Thus, we concluded that because "alimony is not properly considered as income when child support is established, the cessation of alimony cannot be considered a diminution in income when determining whether there has been a material change of circumstances justifying a modification of child support."[11]

Recently, relying on our decision in *Gallner*, the Court of Appeals held that alimony is not income when considering an application to modify child support.[12] In *Roberts v. Roberts*,[13] the original decree awarded the wife alimony and the district court included this alimony in its calculation of the wife's total monthly income for the purpose of recalculating child support in a modification action. In reversing the trial court's ruling, the Court of Appeals reasoned that "if child support is calculated before alimony, such alimony should be excluded when calculating income in a modification proceeding."[14]

---

[10] *Id.*

[11] *Id.* at 1003, 653 N.W.2d at 845.

[12] *Roberts v. Roberts*, 25 Neb. App. 192, 903 N.W.2d 267 (2017).

[13] *Id.*

[14] *Id.* at 202, 903 N.W.2d at 276. See, also, *Coffey v. Coffey*, 11 Neb. App. 788, 661 N.W.2d 327 (2003).

James argues that this interpretation is incorrect, because during a modification proceeding, alimony has already been established and the NCSG does not specifically exclude such as income after it has been established.

[6-10] The NCSG was created by this court through a formal rulemaking process pursuant to a statutory grant of administrative authority from the Legislature.[15] For purposes of construction, Nebraska Supreme Court rules are treated like statutes.[16] Absent a statutory indication to the contrary, language contained in a Supreme Court rule is to be given its plain and ordinary meaning.[17] Just as statutes relating to the same subject are in pari materia and should be construed together, Supreme Court rules should be read and construed together.[18] A court must attempt to give effect to all parts of a Supreme Court rule, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[19] An appellate court should try to avoid, if possible, the construction of a Supreme Court rule that would lead to an absurd result.[20]

While the NCSG does not explicitly exclude alimony from child support calculations in all circumstances, we held in *Gallner* that § 4-213 clearly excludes alimony from the parties' total monthly incomes in the initial decree. If we were to accept James' interpretation of the NCSG limiting the effect of § 4-213 to this circumstance, then any decree ordering both child support and alimony obligations could be open to an

---

[15] See Neb. Rev. Stat. § 42-364.16 (Reissue 2016).

[16] See *State v. Loding*, 296 Neb. 670, 895 N.W.2d 669 (2017).

[17] See *Nebraska Protective Servs. Unit v. State*, 299 Neb. 797, 910 N.W.2d 767 (2018).

[18] *Loding, supra* note 16.

[19] See *Wisner v. Vandelay Investments*, 300 Neb. 825, ___ N.W.2d ___ (2018).

[20] See *In re Trust of Shire*, 299 Neb. 25, 907 N.W.2d 263 (2018).

immediate motion for modification based on the subsequently calculated alimony. Such an interpretation would be absurd in that it would render § 4-213 superfluous, beyond the short duration between the entry of a decree and a motion for modification immediately following.

[11] Accordingly, we agree with the Court of Appeals' holding in *Roberts*. We hold that the NCSG excludes alimony between parents from their total monthly incomes for the purpose of calculating child support obligations for their children in modification proceedings.

This holding is consistent with the statement of the purpose of alimony pursuant to Neb. Rev. Stat. § 42-365 (Reissue 2016): "The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate." Based on § 4-213, we have stated that the relative economic circumstances of the parties are to be tested based on the income available after child support obligations, if any, have been accounted for.[21] Immediately allowing for a modification of child support obligations based on an order of alimony would negate the fact that the alimony was determined with such obligations in mind and hinder the ability of the alimony to aid in the maintenance and support of the spouse for whom it was ordered.

We also reject James' argument that we should disregard § 4-213 as a matter of policy, based on the way other states treat alimony for calculating child support obligations. As mentioned above, the NCSG was promulgated through a formal process, including public comments and input. Thus, this is not the appropriate venue to reevaluate the prudence of the policy behind the NCSG.

---

[21] *Wiedel v. Wiedel*, 300 Neb. 13, 911 N.W.2d 582 (2018).

### (b) James Failed to Produce
### Sufficient Evidence Supporting
### Depreciation Deductions

James argues that the court erred in not deducting depreciation from his total monthly income because he submitted his 2016 personal and corporate tax returns into evidence and both included claimed depreciations. Barbara argues that James had the burden to prove that he was entitled to a deduction and that he failed to do so.

While the NCSG does permit for an allowance of depreciation as a deduction from total monthly income, it also provides specific instructions for proving an entitlement to the deduction and how the deduction should be calculated.[22] Further, § 4-204 provides that "[a] party claiming depreciation shall have the burden of establishing entitlement to its allowance as a deduction."

The most basic requirement for proving an entitlement to a deduction is: "Any party claiming an allowance of depreciation as a deduction from income *shall furnish* to the court and the other party copies of *a minimum of 5 years' tax returns* at least 14 days before any hearing pertaining to the allowance of the deduction."[23] In addition, § 4-204 requires that a depreciated asset must be shown to be ordinary and necessary and that the depreciation was calculated by using the "'straight-line'" method.

James submitted only his 2015 and 2016 personal and corporate income tax returns as evidence of his entitlement to an allowance of depreciation. This evidence is insufficient to warrant a deduction under the minimum of 5 years of tax returns requirement of the NCSG. Additionally, no evidence was provided that the depreciated assets were ordinary and necessary or that the depreciation was calculated by using the

---

[22] See § 4-204.

[23] *Id.*

straight-line method. Therefore, the court did not abuse its discretion by not deducting James' claimed depreciations from his total monthly income.

### (c) Court Did Not Abuse Its
### Discretion in Calculating
### Barbara's Earning Capacity

James contends that Barbara's earning capacity per hour for a 40-hour workweek is $15.47, because she is already making that wage at her part-time job and because she has a college degree. Barbara argues that the remainder of her earning capacity should be calculated at the minimum wage of $9 per hour and that the evidence shows she has never made more than $19,250 in a calendar year.

In determining a party's total monthly income, the NCSG provides that "[i]f applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities."[24] We have stated that use of earning capacity to calculate child support is useful when it appears that the parent is capable of earning more income than is presently being earned.[25] However, earning capacity should be used to determine a child support obligation only when there is evidence that the parent can realize that capacity through reasonable efforts.[26]

The evidence regarding Barbara's earning capacity was limited to her current employment and her Social Security statement. Barbara conceded in her testimony and demonstrative exhibit that she was capable of working a 40-hour workweek, and there was no contrary evidence. While she is currently working 8 hours per week for the hospital service company

---

[24] *Id.*

[25] *Johnson v. Johnson*, 290 Neb. 838, 862 N.W.2d 740 (2015).

[26] *Id.*

for $15.47 per hour, there was no evidence presented that she could obtain additional hours at that job. Further, there was no evidence presented that Barbara had any other job opportunities above the minimum wage, based on her education or work experience.

Based on the evidence presented at trial, we conclude that the court did not abuse its discretion in calculating Barbara's earning capacity. This assignment of error is without merit.

## 2. COURT DID NOT ABUSE ITS DISCRETION IN ABATING BARBARA'S CHILD SUPPORT OBLIGATION

James argues that the court erred in abating Barbara's child support obligation during the summer, because the original decree included 6 weeks of custody for each parent during the summer and therefore changing the distribution of that 6 weeks to alternating weeks was not a material change of circumstance.

Barbara argues that the material change in circumstances was the court's modification to the parties' child support obligations that resulted in her receiving less support from James currently and increasing her obligation after Josee reaches the age of majority.

[12-15] In general, child support payments should be set according to the NCSG.[27] However, a court may deviate from the NCSG if its application in an individual case would be unjust or inappropriate.[28] The court must specifically find that a deviation is warranted based on the evidence and state the reason for the deviation in the decree.[29] A deviation without a clearly articulated justification is an abuse of discretion.[30]

---

[27] *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015).

[28] *Id.*; Neb. Ct. R. § 4-203 (rev. 2011).

[29] *Id.*

[30] *Anderson, supra* note 27.

Deviations from the NCSG must also take into consideration the best interests of the child or children.[31]

Neb. Ct. R. § 4-210 of the NCSG specifically addresses adjustments in child support related to visitation:

> If child support is not calculated under § 4-212 [joint physical custody], an adjustment in child support may be made at the discretion of the court when visitation or parenting time substantially exceeds alternating weekends and holidays and 28 days or more in any 90-day period. During visitation or parenting time periods of 28 days or more in any 90-day period, support payments may be reduced by up to 80 percent.

[16] A party seeking to modify a child support order must show a material change in circumstances that (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered.[32]

The court found an adjustment was warranted under § 4-210 because James had physical custody of the parties' younger children; Josee would reach the age of majority before the coming summer; and the alternating custody during June, July, and August would substantially exceed the 28 days in a 90-day period requirement. The parties' custody during this period would be equal, so the court abated Barbara's obligation by the maximum of the 80 percent permitted. The court's finding that James has substantially higher income than Barbara implies that it is in the best interests of the children to decrease Barbara's support obligation to James during this period so that she may provide for the children while they are in her custody.

While the court had an equivalent amount of shared custody during the summer in its initial decree and Josee's reaching

---

[31] *Pearson v. Pearson*, 285 Neb. 686, 828 N.W.2d 760 (2013); § 4-203.

[32] *State on behalf of Fernando L. v. Rogelio L.*, 299 Neb. 329, 907 N.W.2d 920 (2018).

the age of majority was contemplated when the decree was entered, the court made a substantial increase to Barbara's support obligation in the modification order. This modification was a material change in circumstances that justified ordering an adjustment in Barbara's support obligation. Therefore, the court did not abuse its discretion in abating Barbara's support obligation for the months of June, July, and August.

## V. CONCLUSION

The NCSG excludes alimony between parents from their total monthly incomes for the purpose of calculating child support obligations for their children. We hold that the court did not abuse its discretion in calculating the parties' child support obligations or in abating Barbara's child support payments. Therefore, we affirm.

AFFIRMED.