IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SANCHEZ V. SANCHEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

AARON P. SANCHEZ, APPELLEE,

V.

LAURA B. SANCHEZ, APPELLANT.

Filed December 1, 2020.    No. A-19-1201.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

Steffanie J. Garner Kotik, of Kotik & McClure Law, for appellant.

Jeanelle S. Kleveland, of Kleveland Law Office, for appellee.

PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

MOORE, Judge.

## INTRODUCTION

Laura B. Sanchez appeals from an order entered by the District Court for Lancaster County, modifying a decree of dissolution by increasing her child support obligation. For the following reasons, we affirm the decision of the district court.

## BACKGROUND

The district court entered a decree of dissolution on July 11, 2017, dissolving the marriage between Laura and Aaron P. Sanchez. Two children were born to the marriage. The parties were awarded joint legal custody, while Aaron was awarded primary physical custody. The parenting plan set forth in the original decree ordered the parties to follow a 9 day/5 day parenting plan for every 14 days, and provided for alternating weekly summer parenting time, together with various holiday parenting time. Laura was ordered to pay $500 per month in child support for two children, and $352 per month for one child, based on her gross monthly income of $5,015.68 at the time.

The child support calculation attached to the decree indicates that the support was based upon the joint physical custody worksheet (worksheet 3) and the amount ordered of $500 for two children was slightly less than the calculated support owed by Laura of $544 per month for two children. Laura was also ordered to pay an $8,000 equalization judgment as part of the property division.

On July 8, 2019, Laura filed a complaint seeking modification of both the parenting plan (seeking joint physical custody) and her child support obligation. Among other things, Laura alleged a material change in circumstances due to shift changes at work. Aaron filed an answer and counter complaint alleging a material change in circumstances due to Laura's increased income, and seeking an increase in child support according to the child support guidelines. Aaron also sought a change in the parenting plan to a 10/4 schedule. Trial was held on September 30, 2019. The following evidence relating to the issue of child support was presented at trial.

At the time of trial, Laura was employed by the Nebraska Department of Correctional Services as a corrections corporal. Laura had worked at the department for approximately 5 years. Laura testified that in the past 12 months, she typically worked 60-72 hours per week, including both mandatory and voluntary overtime. Laura explained that her employer first asks for volunteers to fill overtime hours, and in the event that there are not enough volunteers, the overtime hours are mandatorily filled on a rotating basis, taking into consideration seniority. Laura provided monthly self-prepared calendars for January through August 2019, showing the overtime hours that she regularly worked during those months, which were mostly voluntary overtime. Laura testified that her reason for working so many overtime hours was to help pay the equalization judgment ordered against her in the original decree, as well as to pay medical debt and to provide for the children.

Laura testified that at the end of August 2019, she elected in a bidding process to change her work schedule to allow her to work 12-hour shifts instead of 8-hour shifts, resulting in an extra day off each week, which schedule had begun by the time of trial. Her new schedule is Wednesday through Saturday, from 6 a.m. to 8 p.m. At the time of trial, Laura was making $19.36 per hour, and testified that on her new schedule, she would be working an average of 48 hours per week, with 8 hours of that being overtime. Laura anticipated that this new schedule would likely last a year or until a new bid process was in place. Laura did not foresee continuing to work as many hours of overtime as before her schedule change. Laura testified that her average monthly income was expected to be $4,300. Laura did not provide any documentary evidence showing her change in work schedule or hours, nor did she provide a recent paystub reflecting the hours of overtime worked following the change in work schedule. Her most recent paystub for September was "missing" and not offered at trial, but she claimed that it would reflect her reduction in hours and pay due to the shift change. Aaron testified that Laura's work hours changed in September and he knew Laura was still working regular overtime as recently as 4 days prior to trial, because one of her phone calls to the children was placed from her work phone number outside of her regular work hours. Aaron understood that mandatory overtime was imposed upon the department employees due to understaffing.

Laura's W-2 forms for 2017 and 2018 were received in evidence. In 2017, her annual gross income was $52,214, or $4,351 per month. Laura testified that she was not working a substantial amount of overtime in 2017. In 2018, her annual gross income was $62,670.55, or $5,222.55 per month. Laura's most recent pay stub with a pay period ending August 18, 2019, showed an income

of $50,734 year-to-date for the 7.66 months of 2019, which computes to an average of $6,623.24 per month. Laura's year-to-date overtime pay for 2019 was $20,755.39 according to the August 18 paystub.

Laura submitted a proposed child support calculation based upon her estimated monthly gross earnings of $4,362.45. Utilizing the joint custody worksheet (worksheet 3), Laura's share of child support would be $296 per month for two children and $181 for one child. Aaron submitted a proposed child support calculation based on Laura's monthly earnings of $6,623.24 and using the basic income and child calculation (worksheet 1), resulting in a support obligation for Laura of $1,116 per month for two children and $706 for one child.

On November 1, 2019, the district court entered an order finding a material change in circumstances not reasonably foreseen at the time of the prior order sufficient to warrant a modification. The court modified the provisions of the parenting plan to a 10/4 schedule and increased Laura's child support obligation to $1,116 for two children, and $751 for one child, utilizing the basic income and support calculation (worksheet 1). Laura now appeals the child support modification.

ASSIGNMENT OF ERROR

Laura assigns that the district court erred in determining Laura's child support calculation based on her previous overtime earnings when she had a change in work schedule and no longer expected to earn regular overtime.

STANDARD OF REVIEW

Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *Hotz v. Hotz*, 301 Neb. 102, 917 N.W.2d 467 (2018). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Id*. A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

ANALYSIS

A party seeking to modify a child support order must show a material change in circumstances that (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020). Laura does not challenge the court's finding of a material change in circumstances justifying a modification of child support. Rather, Laura argues that the district court erred by increasing her child support obligation based on her previous overtime wages when her work schedule materially changed and she is no longer expected to earn regular overtime.

In general, child support payments should be set according to the Nebraska Child Support Guidelines. *Hotz v. Hotz, supra*. However, a court may deviate from the guidelines if its application in an individual case would be unjust or inappropriate. *Hotz v. Hotz, supra*. Deviations from the guidelines must also take into consideration the best interests of the child or children. *Id*. Child

support established under the Nebraska Child Support Guidelines is presumed correct, unless one or both parties present sufficient evidence to rebut that presumption. *State on behalf of Mariah B. & Renee B. v. Kyle B.,* 298 Neb. 759, 906 N.W.2d 17 (2018).

In calculating child support, the total monthly income of a parent should include earnings "derived from all sources." Neb. Ct. R. § 4-204 (rev. 2016). The guidelines also indicate that in calculating a parent's total monthly income:

> The court may consider overtime wages in determining child support if the overtime is a regular part of the employment and the employee can actually expect to regularly earn a certain amount of income from working overtime. In determining whether working overtime is a regular part of employment, the court may consider such factors as the work history of the employee for the employer, the degree of control the employee has over work conditions, and the nature of the employer's business or industry.

§ 4-204(B). If a parent earns or can reasonably expect to earn a certain amount of income on a regular basis, such income should be included in the child support calculation at divorce unless the presumption is rebutted by showing that the income is speculative in nature and that it is income over which the parent has little or no control. *Noonan v. Noonan*, 261 Neb. 552, 624 N.W.2d 314 (2001). The court in *Noonan v. Noonan* held that the district court erred when it did not include a father's overtime hours in a child support calculation, despite the fact that overtime was not mandatory, because the father consistently volunteered to work overtime hours. See *id.*

In our de novo review, we can find no abuse of discretion by the trial court in its calculation of Laura's child support obligation. The documentary evidence shows that Laura's income has increased since the time of the decree and that she has regularly earned overtime pay since the time of the decree. While Laura argues that she is no longer able to work the amount of overtime she was previously working, there is nothing in the record to support this contention. Rather, Laura testified only that she did not foresee continuing to work as many hours of overtime following her schedule change. Laura did not offer any evidence to show that she had actually worked less hours since the schedule change nor did she offer evidence to show that there would not be voluntary overtime available to her or that she would not be mandatorily required to work additional overtime following her schedule change. Laura's most recent paystub from August 2019, the month prior to the trial, showed 49.75 hours of overtime during a 2-week period. She did not produce her September paystub which she indicated would show reduced hours. Additionally, any change in Laura's income had not lasted for 3 months at the time of trial and Laura did not establish that the change in her income would reasonably continue in the future. See Neb. Ct. R. § 4-217 (requiring change in financial circumstances which have lasted 3 months and can reasonably be expected to last additional 6 months to establish rebuttable presumption of material change of circumstances). On this record, we cannot say that the district court erred in using the most recent wage information available which included the overtime pay that Laura had been regularly receiving.

Alternatively, Laura argues that the district court should have used a 3-year average of her income in computing her child support obligation. However, Laura did not request such an approach at trial; rather, she argued solely that her support should be based upon her anticipated lower earnings. The district court did not abuse its discretion in utilizing Laura's current income in computing her child support obligation.

## CONCLUSION

For the reasons set forth above, we conclude that the district court did not abuse its discretion in modifying Laura's support obligation.

AFFIRMED.