IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE ON BEHALF OF JUNIPER N. V. JAMES N.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA ON BEHALF OF JUNIPER N., A MINOR CHILD, APPELLEE,

V.

JAMES N., DEFENDANT AND THIRD-PARTY PLAINTIFF, AND
AUDREY R., THIRD-PARTY DEFENDANT, APPELLANT.

Filed March 5, 2024.    No. A-23-149.

Appeal from the District Court for Douglas County: LEIGH ANN RETELSDORF, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

David Pontier, of Koenig | Dunne, P.C., L.L.O., for appellant.

Jessica Rasmussen and Megan E. Lutz-Priefert, for appellee State of Nebraska.

No appearance for appellee James N.

PIRTLE, Chief Judge, and MOORE and BISHOP, Judges.

MOORE, Judge.

INTRODUCTION

Audrey R. appeals from the order of the Douglas County District Court that adopted the report and recommendations of the child support referee and modified the child support obligation of James N. Audrey contends that the district court erred in determining the retroactive commencement date of James' increased child support obligation, in its provisions regarding childcare reimbursements and the dependency tax exemption, and in ordering neither party to provide health insurance for the minor child without also ordering cash medical support. We affirm the decision of the district court in part, and in part reverse and remand the cause for further proceedings.

STATEMENT OF FACTS

*Procedural History.*

James and Audrey are the parents of Juniper N., born in August 2019. Prior to Juniper's birth, James and Audrey had been in a long-distance relationship, with James living in Omaha, Nebraska, and Audrey living in San Francisco, California. Beginning in November 2019, Audrey and Juniper lived with James in Omaha, but moved back to California in May 2020 and have remained there since.

The State of California, on behalf of Juniper, sought to establish child support obligations for James. Pursuant to the terms of the Uniform Interstate Family Support Act, the State of Nebraska was authorized to file an action against James in the district court for Douglas County. The court entered an order on January 4, 2021, in which it ordered James to pay child support in the amount of $302 per month, referencing the "Title IV-D Division." The order of support did not provide for cost-sharing responsibilities between the parties as to out-of-pocket medical and childcare expenses. No appeal was taken from that order.

On April 30, 2021, Audrey filed a complaint to intervene as a third-party defendant and to modify the child support order. Audrey requested a recalculation of child support, as well as orders for James to pay a share of medical expenses and childcare costs. The State and James filed answers, and James filed a counterclaim regarding custody of Juniper, which was not litigated further and is not at issue in this appeal.

On July 16, 2021, the district court entered an order allowing Audrey to intervene and join the proceedings as a third-party defendant. The district court referred the matter to a referee.

*Trial.*

Trial on the matter was held before the district court referee on June 30 and August 4, 2022. Additional details of the trial evidence are referenced as necessary in our analysis.

At the start of the trial, the parties stipulated that James had an earning capacity of $27.88 an hour, and that his gross monthly income be set at $4,832.53. The parties also stipulated that James had the ability to pay any retroactive support or cost-sharing reimbursements as determined by the referee. Finally, the parties stipulated that James' share of out-of-pocket birth related expenses that he should be ordered to reimburse to Audrey was $3,053.

Audrey lives in San Francisco and Juniper has resided with her since birth. Audrey began an online geographic information systems graduate program in 2019, prior to the original child support order being entered. Audrey stated that her graduate program would allow her to pursue a more lucrative career with normal business hours, though Audrey was unable to say what her anticipated salary would be in the field of geographic information systems. Audrey's semesters were divided between two, 10-week classes which overlapped for a month during the midway point of the semester. Audrey estimated that she would graduate from the program within a year of trial.

Prior to enrolling in her graduate program, Audrey worked as an inside wireman electrician, but she claimed that she was considered disabled in January 2019 due to her pregnancy with Juniper. Audrey was unable to recall how much she earned as an electrician. James estimated, based on his experience as an electrician, that Audrey was making approximately $74 an hour.

Audrey claimed that she was unable to continue work as an electrician because she could not find childcare to accommodate the early morning shift times, she would not be physically able to do the work, there were no suitable jobs available in San Francisco at the time, and her state certification had expired.

In February 2022, Audrey began a part-time flexible position at an Amazon warehouse. She stated that it was "the only kind of job that I can possibly have with school and with Juniper." Audrey's Amazon paystub dated June 17, 2022, was entered into evidence, and reflected an hourly wage of $17.75. Audrey had no set schedule at Amazon and picked up 4-hour shifts as they became available. The paystub demonstrates that Audrey worked approximately 13 hours during that week, and Audrey testified that she was only available to pick up two to three shifts per week.

At the time of trial, Audrey was on a leave of absence from Amazon as she had "a medical accommodation that they are in the process of deciding whether to accommodate or not." Audrey testified that she did not request the leave of absence, but that Amazon put her on leave "to deny her medical accommodations." The last time Audrey worked at Amazon was in June 2022. Audrey stated that she had "medical limitations from working at just any job." These medical limitations included dry eye syndrome, an inability to work in extreme cold or heat, asthma, allergies, and being generally out of shape and sleep deprived. Audrey stated that she had documentation regarding her medical limitations but had not provided it to the district court or offered it into evidence.

Audrey's tax returns evidence that she earned a total of $6,225 in 2020, and $19,901 in 2021, some of which included pandemic-related benefits. Audrey also received annual student loans of $28,000 in excess of her tuition, which Audrey used for living expenses and to pay bills.

Audrey began paying for childcare in February 2021. Audrey testified that she needed childcare for her graduate program because she was unable to focus on studying when Juniper was present. Juniper was enrolled in part-time childcare from February 2021 through January 2022 at a cost of $300 per week. Audrey then found a new childcare provider whose full-time rate was less than the previous provider's part-time rate, and enrolled Juniper in full-time childcare from February to July 2022 at a cost of approximately $225 per week. In July 2022 a public assistance program began covering Juniper's childcare, though Audrey was unsure of how long the family would benefit from the program.

When asked how many hours a week Audrey was devoting to her education, she responded "as many hours as I can take Juniper to daycare." At the time of trial, Juniper was attending childcare for 40 hours a week. Audrey submitted exhibits regarding her childcare expenses and requested that James be ordered to reimburse her in the sum of $11,385.

Since the first child support order was entered, James provided health insurance for Juniper through his employer. In October 2021, Audrey learned that James' health insurance had changed. Audrey asked James whether he would extend his original health insurance through COBRA, which James declined.

The pediatrician whom Juniper had seen since birth did not accept James' new health insurance and so Audrey purchased an individual plan in February 2022 in order to keep Juniper's pediatrician in network. Audrey indicated that she purchased the "lowest catastrophic level of insurance" because she receives financial assistance as a low-income household through an

umbrella network in which Juniper's pediatrician participates. This financial assistance pays for many of the regular medical bills incurred by Juniper.

Documentation received in evidence shows that a "Health Net" minimum coverage preferred provider organization insurance plan for "child only" was procured for Juniper for the year 2022, with a monthly premium of $389.79. A payment confirmation shows that Audrey paid at least one monthly premium payment on April 1, 2022. She had not received any reimbursement from James for this coverage. Audrey herself receives health insurance through her county's Medicaid program.

Audrey has been claiming Juniper for the child tax credit on her annual taxes.

James testified that he was not working at the time of trial. He had resigned from his landscaping job in early June 2022 because he did not find the position to be a good fit for his personality.

*Referee Report and District Court Order.*

The referee filed her report on September 13, 2022. The referee found that, having observed the parties' demeanor and heard their testimony during trial, "neither party is a credible witness, and that the testimony of both parties is unreliable at best."

The referee noted that the original order of support required James to provide health insurance for Juniper, as he had voluntarily elected to do so. However, the referee found that was no longer reasonable given that James resides in Nebraska and Audrey and Juniper live in California. The referee concluded that it was highly unlikely that any health insurance coverage James could obtain from employment in Nebraska would provide useful benefits for a child in California. The referee also found that Audrey did not have health insurance available to her at a reasonable cost and therefore did not recommend that Audrey be ordered to provide health insurance for Juniper.

The referee next found that James' monthly child support obligation should be increased to $509 per month per the referee's own calculation, using the stipulated income of $4,832.53 for James and the imputed sum of $3,076.67 for Audrey. The referee rejected Audrey's request to have the modified child support commence retroactively to the first day of the month after the filing of her complaint; May 1, 2021. Instead, the referee found that the modified child support should commence on July 1, 2022, because James had requested only one continuance in the matter, and the two other continuances had been based on the referee's own motions. The referee also found that when "[c]onsidering the other retroactive expenses and ongoing increased obligation and contributions to childcare and health care expenses," it was not fair or equitable for James' retroactive obligation to commence May 1, 2021.

Regarding cost-sharing, the referee found that James should pay 55 percent and Audrey should pay 45 percent of all non-reimbursed medical expenses for Juniper, after Audrey's payment of the first $250, commencing July 1, 2022. The referee recommended the same cost-sharing percentages apply to childcare expenses for Juniper, but the referee recommended limiting such expenses to only include Audrey's graduate program's "in class" and work hours, "but not for study time, preparation time, etc." The referee also found that James should be given 1 year to provide Audrey with childcare reimbursements after Audrey submits proof of the childcare costs to James.

Finally, the referee rejected Audrey's request to be able to claim Juniper each year on her taxes for the dependency exemption and instead recommended that the parties alternate claiming Juniper each year.

On September 27, 2022, Audrey filed an exception to the findings and recommendations of the district court referee and requested a hearing. Audrey asserted error to the referee's imputation of Audrey's income, the finding that neither party should be ordered to provide health insurance for Juniper, the child support calculation in light of the alleged income and health insurance errors, the division of health care and childcare cost-sharing, the retroactive date for the modified child support obligations, the limitation that only "in class" childcare expenses be cost-shared, the timing of the childcare reimbursement, and the tax dependency award. An exception hearing was held before the district court on November 16, and the court heard Audrey's arguments regarding her various exceptions.

On January 30, 2023, the district court entered an order adopting the referee's report in full. Audrey appeals.

ASSIGNMENTS OF ERROR

Audrey assigns that the district court abused its discretion by (1) not ordering either party to provide health insurance for Juniper without also ordering cash medical support; (2) not ordering retroactive child support to commence on May 1, 2021; (3) limiting Audrey's childcare reimbursements to only her graduate program's in-class hours; (4) allowing James 1 year to pay his outstanding childcare reimbursement; and (5) ordering the parties to alternate claiming Juniper on their respective annual tax returns.

STANDARD OF REVIEW

Modification of child support is entrusted to the discretion of the trial court. *Hotz v. Hotz*, 301 Neb. 102, 917 N.W.2d 467 (2018). An appellate court reviews proceedings for modification of child support de novo on the record and will affirm the judgment of the trial court absent an abuse of discretion. *Id.*

ANALYSIS

*Health Insurance and Cash Medical Support.*

Audrey first assigns that the district court erred in adopting the referee's recommendation, over Audrey's exception, to order neither party provide health insurance for Juniper without also ordering cash medical support payment.

Neb. Rev. Stat. § 42-369 (Reissue 2016) states that health insurance, where available, should be provided by a minor child's parents. Section 42-369(2)(a) provides that the availability of health insurance is dependent upon its accessibility, in that the health insurance must provide coverage in the geographical area in which the minor child resides, and notes that it must be available at a reasonable cost. This section goes on to provide:

> If health care coverage is not available or is inaccessible and one or more of the parties are receiving Title IV-D services, then cash medical support *shall be ordered*. Cash medical support or the cost of health care coverage is considered reasonable in cost if the cost to the party responsible for providing medical support does not exceed the amount set forth

in child support guidelines established by the Supreme Court by court rule pursuant to section 42-364.16.

(Emphasis supplied). Cash medical support is defined as "an amount ordered to be paid toward the cost of health care coverage provided by a public entity or by another parent through employment or otherwise or for other medical costs not covered by insurance or other health care coverage." See § 42-369(2)(b)(ii).

Also relevant are the Nebraska Child Support Guidelines. Neb. Ct. R. § 4-215 (rev. 2020) (emphasis supplied) provides as follows:

(C) Cash Medical Support and Health Care Costs for Title IV-D Cases Only.

(i) *All child support orders in the Title IV-D program must address how the parties will provide for the child(ren)'s health care needs through public or private health care coverage and/or through cash medical support.* Cash medical support or the cost of private health insurance is considered reasonable in cost if the cost to the party responsible for providing medical support for the child(ren) does not exceed 5 percent of his or her gross income. In applying the 5-percent standard, the cost is the cost of adding the child(ren) to existing health care coverage or the difference between self-only and the lesser of employee-plus-children or family health care coverage. Cash medical support payment shall not be ordered if, at the time that the order is issued or modified, the responsible party's income is, or such expense would reduce the responsible party's net income, below the basic subsistence limitation provided in § 4-218. If a court orders a parent to pay cash medical support, it shall be in lieu of, and not in addition to, requiring the parent to also pay reimbursement for reasonable and necessary children's health care costs as set forth in § 4-215(B).

(ii) The amount of cash medical support ordered in the case shall be prorated between the parents. When worksheet 1 is used, it shall be added to the monthly support from line 7, then prorated between the parents to arrive at each party's share of monthly support on line 10 of worksheet 1. The parent paying the cash medical support receives a credit against his or her share of the monthly support.

The referee recommended that Audrey's monthly gross income be placed at $3,076.67. The referee calculated this amount by multiplying $17.75 an hour (Audrey's Amazon wage) by 40 hours per week by 52 weeks per year. The referee also found this income calculation to be fair considering that the minimum wage in California, where Audrey resides, is $15 an hour. Though Audrey made an exception to the referee's imputed income, she does not assign the district court's adoption of the referee's calculation of her income as error in this appeal. Rather, she assigns that the district court erred in ordering neither parent to provide health insurance for Juniper, while at the same time failing to order cash medical support. We agree that the statute and guidelines cited above required the court to order one or the other in this case.

At trial, Audrey testified that she purchased a health insurance plan to cover Juniper in order to remain in network with her California medical providers. Audrey was willing to continue providing that insurance, which she described as a "catastrophic" policy, as she was able to receive assistance with Juniper's medical costs under a low-income benefits program. Audrey requested

credit in the child support calculations for the monthly cost of the premium, which was $389.79. At trial, the State also requested that Audrey be ordered to maintain health insurance for Juniper and receive credit for the premium in the child support calculation. Audrey asked that James be required to pay a portion of any uninsured health-related expenses.

Juniper's monthly health care premium is 12.67 percent of Audrey's imputed gross income, which exceeds the 5 percent to be considered a reasonable cost under the Nebraska Child Support Guidelines. This supports the referee's finding that the cost to Audrey was not reasonable. In her exception, Audrey asked the district court to revise the referee's findings to order *either* that she be ordered to cover Juniper on her private health insurance plan, *or* that James be required to pay cash medical support pursuant to § 4-215 of the guidelines. The district court did not specifically address this issue in its order; rather, it generally found that the referee's findings of fact were supported by the record and the court accepted the report. Thus, the court ordered James to pay increased child support of $509 per month, along with 55 percent of unreimbursed medical expenses.

In its brief, the State argues that because the district court ordered any non-reimbursed health care costs to be apportioned between the parties, ordering cash medical support was not necessary. The State is correct that the Nebraska Child Support Guidelines provide that if a court orders a parent to pay cash medical support, it shall be in lieu of, and not in addition to, requiring the parent to also pay reimbursement for reasonable and necessary children's health care costs. See Neb. Ct. R. § 4-215(C)(i). However, we do not read the guidelines to say that requiring a parent to pay reimbursement for reasonable and necessary children's health care costs satisfies the statutory requirement to order health insurance coverage and/or cash medical support in Title IV-D cases.

We conclude that because the district court did not order either party to provide health insurance for Juniper, the court erred when it failed to order cash medical support as required by Neb. Rev. Stat. § 42-369(2)(a) and § 4-215(C)(i) of the guidelines. We reverse the decision of the district court with regard to medical expense reimbursements, and remand for further proceedings.

*Retroactive Child Support.*

Audrey next assigns that the district court abused its discretion by adopting the referee's recommendation over Audrey's exception, and failing to order the modified child support obligation to commence retroactively on May 1, 2021, the first day of the month following Audrey's complaint for modification.

Whether a child support order should be retroactive is entrusted to the discretion of the trial court, and an appellate court will affirm its decision absent an abuse of discretion. *Johnson v. Johnson*, 290 Neb. 838, 862 N.W.2d 740 (2015). In determining whether to order a retroactive modification of child support, a court must consider the parties' status, character, situation, and attendant circumstances. *Id*. Absent equities to the contrary, modification of a child support order should be applied retroactively to the first day of the month following the filing date of the application for modification. *Id*. In modification of child support proceedings, the children and the custodial parent should not be penalized by delay in the legal process, nor should the noncustodial parent gratuitously benefit from such delay. *Id*.

In this case the parties stipulated at trial that James' earning capacity had increased since the original order of support and that James had the present ability to pay any retroactive child support or cost-sharing reimbursements as determined by the referee. The referee increased James's monthly child support obligation from $302 to $509. The referee also determined that the modified child support obligation should not commence retroactively to May 1, 2021, and instead recommended the obligation commence July 1, 2022. The referee cited various equities to support this recommendation, including that James had requested only one continuance, that the referee had continued proceedings twice on its own motions, and that when "[c]onsidering the other retroactive expenses and ongoing increased obligation and contributions to childcare and health care expenses," the referee found it was not fair or equitable for James's retroactive obligation to commence May 1, 2021.

Although the children and the custodial parent should not be penalized by delay in the legal process during modification of child support proceedings, Nebraska courts have considered the cause when determining whether a delay is an equitable consideration meriting a decision to not make increased support fully retroactive. See *Johnson v. Johnson, supra* (delay caused in part by the retirement of the judge who presided over the dissolution, and in part by the mother's resistance and delay in processing the case); *Schmaderer v. Schmaderer*, No. A-17-036, 2017 WL 4791104 (Neb. Ct. App. Oct. 24, 2017) (selecting for posting to court website) (delays in legal proceedings did not appear to be solely fault of one or other party); *Cohrs v. Bruns*, No. A-14-740, 2015 WL 8267953 (Neb. Ct. App. Dec. 8, 2015) (selected for posting to court website) (delays in legal proceedings were result of parties' numerous motions as well as court's full docket).

Additionally, in the absence of a showing of bad faith, it is an abuse of discretion for a court to award retroactive support when the evidence shows the obligated parent does not have the ability to pay the retroactive support and still meet current obligations. See *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013).

In the modified child support order, James was not only ordered to pay an increased monthly child support obligation, but also to pay increased contributions to Juniper's childcare and health care expenses, reimbursements for Audrey's prenatal and childbirth expenses, and some of Audrey's attorney fees. James testified at trial that he was unemployed, although it was because he had voluntarily resigned from his job. Implicit in the referee's reasoning for a later retroactive commencement date for James' increased child support obligation is a concern that James would be unable to pay the immediate 14-month child support arrearage and meet the additional obligations imposed by the modification order.

Based on the record, we cannot say the district court abused its discretion in failing to make the support modification retroactive to May 1, 2021. A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. See *Freeman v. Groskopf, supra*. Those factors are not present here. Further, while the parties stipulated to James' ability to pay retroactive support, they left the determination of the retroactive start date to the court. Thus, we do not find an abuse of discretion in ordering James' modified child support obligations to commence retroactively to July 1, 2022.

*Limitation of Childcare Reimbursement.*

Audrey assigns that the district court erred and abused its discretion by adopting the referee's recommendation, over Audrey's exception, to order that Audrey's childcare reimbursements from James be limited to only the in-class hours for her graduate program. Audrey argues that because her graduate program is online, the in-class limitation as written would exclude all childcare reimbursements related to Audrey's graduate education, as she does not attend classes in person. She also contends that she should be reimbursed for time spent studying and completing necessary coursework for her graduate program.

The Nebraska Child Support Guidelines defines childcare expenses as care expenses for the child for whom the support is being set, which are "due to employment of either parent or to allow the parent to obtain training or education necessary to obtain a job or enhance earning potential . . ." Neb. Ct. R. § 4-214 (rev. 2016). The basic requirements for expenses to be considered childcare or daycare are that they be work- or education-related and reasonable. *Moore v. Moore*, 302 Neb. 588, 924 N.W.2d 314 (2019).

The referee's report recommended that James should be required to pay 50 percent of the childcare expenses incurred by Audrey only during hours spent in class or at work. In order to be reimbursed for past expenses, Audrey was required to submit "proof of class hours (i.e., class registrations, etc.) or work time sheets . . ." Audrey's testimony at trial was clear that her graduate program is online. We thus interpret the referee's provision related to "hours spent in class," to mean Audrey's attendance at the online classes, rather than time spent physically present for educational instruction.

Audrey originally stated that she spent 20 hours a week on one of her graduate classes but was not specific as to how many of those hours could be attributed to online instruction and how many were spent on studying and preparation for class. Later Audrey was asked how many hours a week she was devoting to her education, and she responded, "as many hours as I can take Juniper to daycare." The referee appears to have been concerned about Audrey inflating the amount of time that she spent on her graduate program and requiring James to reimburse Audrey for those related childcare expenses.

When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018). Here we defer to the referee's credibility determination and find that the recommendation that childcare reimbursements be limited to credit hours which could be evidenced through class registration forms or other documentation to be within the discretion of the district court. The district court did not abuse its discretion in so ordering.

*Retroactive Childcare Expenses.*

Audrey also assigns that the district court erred and abused its discretion by adopting, over Audrey's exception, the referee's recommendation to set aside the parties' stipulation that James was able to pay retroactive childcare reimbursements immediately to Audrey and instead allowing James to have 1 year to pay.

As discussed above, the referee recommended that James be required to pay 50 percent of the childcare expenses incurred by Audrey during her in class and working hours. Audrey testified that she had been paying for Juniper's childcare from February 2021 until July 2022. In its report the referee noted that, "in light of the time that has been passed," it was fair to give James 1 year to reimburse Audrey for past childcare expenses.

We first note that the stipulation of the parties that James had the ability to pay retroactive childcare expenses did not state that the expenses were to be paid immediately as Audrey argues. Given that James must reimburse Audrey for over a year of childcare expenses, we cannot say it is an abuse of discretion for the district court to give James a year to provide payment, especially when considering the other equities discussed above in our analysis of James's retroactive child support obligation.

*Tax Dependency Exemption.*

Lastly Audrey assigns that the district court erred by adopting the referee's recommendation that the parties annually alternate claiming Juniper for tax dependency purposes. Audrey argues that because she has been Juniper's primary custodial parent since birth, she is entitled to the economic benefit.

In general, the custodial parent is presumptively entitled to the federal tax exemption for a dependent child. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). A court may exercise its equitable powers and order the custodial parent to execute a waiver of his or her right to claim the tax exemption for a dependent child if the situation of the parties so requires. *Id*. Allocation of the dependency exemption to the noncustodial parent is not warranted if the parent pays a relatively small amount of child support. *Id*.

Audrey points us to the Nebraska Supreme Court case *Anderson v. Anderson, supra*, which held that the district court erred in ordering the parties to alternate claiming the dependency exemption as the non-custodial parent was ordered to pay $50 in child support while the custodial parent's monthly share of support was $850. The Supreme Court found that given the relatively small share of child support paid by the non-custodial parent, she had not rebutted the presumption that the custodial parent was entitled to claim the exemption.

We find this case to be distinguishable from *Anderson*. Here, the child support calculator attached to the referee's report and adopted by the district court reflects that James pays $509 in monthly child support compared to Audrey's share of $411. These amounts represent 55 percent of James' monthly net income and 45 percent of Audrey's. These percentages also make up the cost-sharing scheme for childcare expenses.

Because James is contributing a greater share of his monthly net income to Juniper's various expenses, we find the presumption that Audrey is entitled to the federal tax exemption for a dependent to be sufficiently rebutted. Thus, the district court did not abuse its discretion in ordering the parties to alternate claiming Juniper for tax dependency purposes.

CONCLUSION

We affirm the order of the district court as to the retroactive child support commencement date, childcare reimbursements, and the tax dependency exemption. But because the district court did not order either party to provide health insurance for Juniper, the court erred in failing to order

cash medical support. We reverse the order with respect to unreimbursed medical expenses and remand for further proceedings.

ACKNOWLEDGE

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.