Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/31/2022 08:13 AM CDT

Jamie R. Cronin, now known as Jamie R.
Maskil-Cronin, appellant and cross-appellee,
v. Keith P. Cronin, appellee
and cross-appellant.
___ N.W.2d ___

Filed May 24, 2022.    No. A-21-310.

1. **Modification of Decree: Appeal and Error.** Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court.
2. **Evidence: Appeal and Error.** When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.
3. **Child Support: Rules of the Supreme Court.** The main principle behind the Nebraska Child Support Guidelines is to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes.
4. ____: ____. When determining total income under the Nebraska Child Support Guidelines, all income from all sources is to be included except for those incomes specifically excluded.
5. **Child Support: Rules of the Supreme Court: Evidence: Presumptions.** When determining total income under the Nebraska Child Support Guidelines, a court should not include income that is speculative in nature and over which the party has little or no control. But when the evidence shows the party earns or can reasonably expect to earn a certain amount of income on a regular basis, a rebuttable presumption of including such income arises.
6. **Child Support.** As a general matter, the parties' current earnings are to be used in calculating child support.

7. **Child Support: Taxes.** The choice of tax filing status when running a child support calculation should correlate with a party's actual tax liability as closely as possible.

8. **Modification of Decree: Child Support: Proof.** A party seeking to modify a child support order must show a material change in circumstances that (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered.

9. **Modification of Decree: Child Support.** Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent.

10. **Modification of Decree: Child Support: Rules of the Supreme Court.** When a prior order of child support constitutes a deviation from the Nebraska Child Support Guidelines, a party may not seek modification of that order solely on the basis that the guidelines would result in a different child support amount.

11. **Modification of Decree: Child Support.** In determining whether to order a retroactive modification of child support, a court must consider the parties' status, character, situation, and attendant circumstances.

12. **Modification of Decree: Child Support: Time.** Absent equities to the contrary, modification of a child support order should be applied retroactively to the first day of the month following the filing day of the application for modification.

13. **Modification of Decree: Time: Appeal and Error.** The initial determination regarding the retroactive application of a modification order is entrusted to the discretion of the court and will be affirmed on appeal absent an abuse of discretion.

Appeal from the District Court for Sarpy County: STEFANIE A. MARTINEZ, Judge. Affirmed as modified.

David Pontier, of Koenig | Dunne, P.C., L.L.O., for appellant.

Virginia A. Albers, of Slowiaczek Albers, P.C., L.L.O., for appellee.

PIRTLE, Chief Judge, and RIEDMANN and BISHOP, Judges.

Bishop, Judge.

## I. INTRODUCTION

Jamie R. Cronin, now known as Jamie R. Maskil-Cronin, appeals from an order of the Sarpy County District Court modifying the decree dissolving her marriage to Keith R. Cronin. She claims multiple errors relating to the district court's modification of Keith's child support obligation; Keith cross-appeals the court's determination of Jamie's income. We affirm the order as modified.

## II. BACKGROUND

### 1. December 2011 Decree

Jamie and Keith were married on September 29, 2001. Two sons were born during the marriage: Nathan Cronin, born in 2002, and Brock Cronin, born in 2006. The marriage was dissolved by decree on December 1, 2011. The decree adopted and incorporated the parenting plan agreed upon by Jamie and Keith, which gave the parties joint legal and physical custody of the children.

As relevant to this appeal, the decree divided the financial obligations regarding the minor children between the parties. The decree ordered:

> [Jamie] shall pay forty percent (40%) and [Keith] shall pay sixty percent (60%) of the minor children's extra-curricular and sports-related activities, including but not limited to, Select and Power sports, baseball, football, basketball, swimming, and other non-related school activities the minor children participate in by mutual agreement of the parties.

The decree also required Keith to maintain health insurance for both children. The children's "co-pays and uninsured medical, dental, orthodontia, and ophthalmology expenses," as well as "child care expenses incurred for the minor children . . . due to employment of either parent or to allow either parent to obtain training or education necessary to obtain a job or enhance earning potential," were to be divided in

the same fashion as the children's sports and extracurricular expenses. The decree further ordered that Jamie "shall pay for all other incidental expenses of the minor children." We also note that the "Explanation of Child Support Calculations" attached to the decree states that Jamie would "pay all direct expenses of the children with the exception of sports."

The decree ordered Keith to pay child support to Jamie for the two minor children. At the time of the decree, Keith's income included annuity payments scheduled to end in June 2013. He was also paying $450 per month in child support for a child from a previous marriage, and the "Explanation of Child Support Calculations" indicated that this child would be emancipated in April 2016. Three separate joint custody child support calculations were attached to the decree. The first calculated Keith's obligation under the Nebraska Child Support Guidelines to be $648.74 per month for two children, and this calculation accounted for Keith's annuity income and his prior child support obligation. The second calculated Keith's child support to be $322.76 per month for two children while accounting only for his prior child support obligation. The third calculated Keith's child support obligation to be $394.72 per month for two children without accounting for his annuity income and prior child support obligation.

The district court found that "[a]n upward deviation from the Nebraska Child Support Guidelines [was] warranted based on the expense sharing between the parties and child support should be increased as a result. . . ." The decree required Keith to pay Jamie $1,350 per month in child support until June 1, 2013, after which Keith's child support obligation would be reduced to $1,000 per month. Keith's child support payments were scheduled to continue at this monthly rate until "one of the [parties'] minor children reaches the age of majority, dies, marries, [or] becomes emancipated, or until further order of this Court," at which time Keith's child support obligation would be further reduced to $800 per month.

## 2. June 2020 Complaint for Modification

On June 5, 2020, Keith filed an "Application to Modify Decree of Dissolution of Marriage" in the Sarpy County District Court. He alleged there had been a material change in circumstances since the entry of the decree due to changes in the parties' respective incomes that justified modification of his child support obligation and the allocation of expenses for the parties' children.

Jamie filed an "Answer and Counterclaim" on July 22, 2020, denying the material allegations of Keith's application. She alleged in her counterclaim that (1) Keith had "routinely failed to exercise his court-ordered parenting time," (2) his work-related travel "prevents him from exercising his court-ordered parenting time," and (3) his new residence "distance[d] the minor children from their school and friends." Jamie requested the district court to grant her primary physical custody of the children and recalculate Keith's child support obligation. Jamie thereafter filed an "Answer and Amended Counterclaim" on December 3 pursuant to a stipulation between the parties. In her amended counterclaim, Jamie again asserted the first two allegations initially made in her counterclaim, but dropped the third one. She further alleged that the "parties' employment and incomes have changed" and requested the court to increase Keith's child support obligation.

Trial took place on March 22, 2021. Each party testified, and multiple exhibits were received regarding the parties' employment and financial circumstances. The testimony and exhibits will be discussed as relevant to the errors assigned in our analysis below.

On April 9, 2021, the district court entered an order modifying the parties' decree. The court found that both Jamie and Keith had each proved a material change in circumstances to warrant modification of child support. With respect to Keith, the court determined that Keith had proved "there has been a change in financial circumstances which [has] lasted three months and can reasonably be expected to last for an

additional six months and application of the child support guidelines does result in a variation by ten percent or more from the original child support obligation." Regarding the parties' employment and income, the court observed:

4. [Keith's] income has decreased due to a change in position at Union Pacific Railroad and the change in the distribution of retention shares. The Court finds that, to arrive at his current income, an average of the last five years is appropriate. Based on the evidence, [Keith's] current monthly income is $16,985. [Keith] should also be given credit of $248 for health insurance paid per month for the children. As to the filing status, although there was testimony that [Keith] has remarried, there was no evidence as to [what] his current filing status is with his new spouse. As such, the filing status should be single.

5. [Jamie] is currently unemployed. [She] was previously employed for approximately 20 years at Union Pacific. Upon termination, [Jamie] was given a severance package of $130,000. The Court finds that the $130,000 should not be counted as income for purposes of child support because it was a one-time payment. The Court also finds that [she] should be assessed her last year's income while employed at Union Pacific. This was an otherwise steady income and there was no evidence that her earning capacity has decreased. Therefore, [Jamie's] current monthly income should be assessed at $9,139 and her tax filing status should be "head of household."

The district court also concluded that the "upward deviation [in the December 2011 decree] is no longer necessary and should be removed," noting that incidental expenses allocated to Jamie under the decree had "been less than $600 per month for the last few years" and that the children's "sport and activity expenses will significantly decrease" as a result of the children entering high school. The court also observed that in addition to child support and his share of other expenses,

Keith had been paying "approximately $440 per month" for his sons' cell phones and the elder son's car. The court further found that Jamie has, "at most, . . . had ten extra days per year with the children" due to Keith's business travel, although it noted that Keith was "able to be flexible" with his work-related travel.

After setting forth its factual findings, the district court ordered Keith to pay $451 per month in child support for two children retroactive to July 1, 2020. The order provided that this obligation would be reduced to $291 per month when only one of the parties' children would be eligible to receive child support. The court also modified the parties' cost-sharing arrangement, ordering Keith to pay 63 percent of "[a]ll reasonable and necessary direct expenditures made solely for the minor children such as clothing and extracurricular activities" while Jamie would pay the remaining 37 percent, and the order further required that "[a]ny expense over $100 shall be agreed to in advance." The court denied any other relief not expressly addressed in the order.

Jamie appeals and Keith cross-appeals the district court's order.

## III. ASSIGNMENTS OF ERROR

Jamie claims on appeal that the district court abused its discretion in (1) calculating Keith's modified child support obligation based on inaccurate findings concerning Keith's income, marital status, child tax credits and exemptions, and annual overnights with the children; (2) finding that a material change in circumstances existed that warranted modification of Keith's child support obligation; and (3) setting Keith's modified child support obligation retroactive to July 1, 2020, without also retroactively modifying Jamie's obligations under the December 2011 decree to the same date.

On cross-appeal, Keith claims the district court incorrectly imputed income to Jamie and should have adopted his proposed child support calculation.

## IV. STANDARD OF REVIEW

[1,2] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020). When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## V. ANALYSIS

### 1. Calculation of Parties' Incomes

We first note that Jamie and Keith each argue, on appeal and cross-appeal respectively, that the district court erred in calculating the other's income for purposes of child support. The court found a material change in circumstances stemming in part from changes in each party's income and employment that would result in a variation by 10 percent or more from the original child support obligation. Accordingly, we examine the court's calculation of the parties' incomes as a threshold matter before we determine whether a material change in circumstances has occurred since the entry of the December 2011 decree.

### (a) Keith's Income

#### (i) Evidence at Trial

Keith testified that his employment with Union Pacific Railroad (Union Pacific) has continued since the entry of the December 2011 decree. However, his original position was "eliminated" in October 2018 and he was able to find a new position with Union Pacific shortly thereafter. Keith explained that his compensation primarily entailed three major pieces: an "annual-based salary," a "performance-based" bonus, and an annual stock award of "retention shares" automatically placed in an "E-TRADE" account provided to Keith. According to

Keith's testimony, these shares would vest after 4 years so long as the recipient remained employed by Union Pacific. Upon vesting, "a certain amount [of shares] are sold to cover the taxes for those shares," and Keith could then either sell the remaining shares immediately or hold them as an investment. In either case, Keith affirmed that the income reported on his annual W-2 "reflect[ed] the total vesting of retention shares in any given year, [including] those that were sold and those that [he] would be retaining."

Keith testified that the retention shares were a "significant aspect" of his employment compensation and that the number of shares he received annually had been decreasing over several years. According to Keith's "E-TRADE" account statements received at the modification hearing, he received 550 retention shares in 2014, 546 shares in 2015, 385 shares in 2016, 280 shares in 2017, 241 shares in 2018, 75 shares in 2019, and 97 shares in 2020. As of December 2020, Keith's retention shares from 2017 through 2020 had a market price of $208.22 per share and were worth approximately $144,296 in total. Keith further received 34 shares in February 2021, and these shares were valued at approximately $7,000 upon receipt.

The record includes copies of various financial documents regarding Keith's income, including his tax returns from 2018 and 2019 filed jointly with his current wife, his W-2 forms from 2017 through 2020, and his compensation statements from Union Pacific. According to his W-2 forms, which included the value of the retention shares that vested each year, Keith's total income was $249,222 in 2017; $249,386 in 2018; $253,271 in 2019; and $226,919 in 2020. We also note that Keith reported $66,032.82 in proceeds from the short-term sale of 387 shares of Union Pacific stock on his 2019 tax return and $41,259.74 in proceeds from the short-term sale of 321 shares of Union Pacific stock on his 2018 tax return. His 2018 tax return also reports $62,514.57 in proceeds from the long-term sale of 487 shares of Union Pacific stock.

Regarding his 2021 income, Keith testified on cross-examination that his "base salary" for 2021 was $149,556 and that he would receive a bonus of $24,000. He further affirmed that he had received 280 retention shares in February 2017 and that these shares had a combined value of $55,608 when they vested on February 2, 2021. Added together, these amounts total approximately $229,164.

### (ii) Calculation of Keith's Income

Jamie and Keith each offered an aid to the district court in calculating Keith's child support, and both exhibits were received by the court accordingly. Jamie offered exhibit 26, a child support calculation worksheet listing Keith's income as $19,097 per month, or $229,164 annually.

Keith offered exhibit 16 as a summary of his current income. Exhibit 16 added Keith's 2021 salary and bonus together for a total of $173,556 representing his cash compensation. Exhibit 16 further combined the values of Keith's retention shares from 2017 through 2021 for a 5-year total value of $151,296 based on the shares' values set forth in Keith's December 2020 "E-TRADE" statement and 2020 compensation statement. This amount was then divided over 5 years for an average annual retention share value of $30,259. After combining this amount with Keith's 2021 cash compensation, exhibit 16 estimated Keith's income to be $203,815 per year, or $16,985 per month.

In its order modifying child support, the district court found in pertinent part that Keith's "income has decreased due to a change in position at Union Pacific . . . and the change in the distribution of retention shares" and that "to arrive at his current income, an average of the last five years is appropriate." The court determined Keith's current monthly income to be $16,985.

Jamie claims that the district court erred in calculating Keith's income. She asserts the court "explicitly found that

the average of Keith's last five years of gross income was the appropriate method to determine his total income." Brief for appellant at 18. However, she notes that the court instead "attempted to average [Keith's] 2021 income with his projected future incomes for 2022, 2023, and 2024." *Id.* at 20. She argues that the value of Keith's retention shares that will vest after 2021 is "unknowable," and she notes that although Keith testified as to the reduced number of shares he received each year, the value of his shares has "nearly doubled in the three years leading up to trial." *Id.*

[3-5] The main principle behind the Nebraska Child Support Guidelines is to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes. *Hotz v. Hotz*, 301 Neb. 102, 917 N.W.2d 467 (2018). The Nebraska Supreme Court has stated that under the Nebraska Child Support Guidelines, "'all income from all sources is to be included except for those incomes specifically excluded.'" *Hotz v. Hotz*, 301 Neb. at 108, 917 N.W.2d at 474. However, the Supreme Court has cautioned that a party's monthly income for child support purposes should not include amounts that are "'"speculative in nature and over which the [party] has little or no control."'" See *Vanderveer v. Vanderveer*, 310 Neb. 196, 218, 964 N.W.2d 694, 710-11 (2021). See, also, *Noonan v. Noonan*, 261 Neb. 552, 624 N.W.2d 314 (2001). "But when the evidence shows the party 'earns or can reasonably expect to earn a certain amount of income on a regular basis, a rebuttable presumption of including such income arises under the Guidelines.'" *Vanderveer v. Vanderveer*, 310 Neb. at 218, 964 N.W.2d at 711.

Neither party disputes that the calculation of Keith's income should include some amount attributed to the retention shares that he has received and will continue to receive as annual compensation. The evidence as described above indicates that Keith was regularly selling some amount of his retention shares immediately after they vested, and we agree that it

was appropriate to include some amount attributable to his retention share awards in the computation of his income for child support purposes. See *Vanderveer v. Vanderveer, supra* (reversing district court's exclusion of father's proceeds from cashed restricted stock units from calculation of father's income for child support purposes; father received stock units as part of his employment compensation and regularly cashed vested stock units to generate significant income over several prior years).

Although not expressly stated in its modification order, it is evident the district court relied on Keith's calculation of his income as set forth in exhibit 16. However, we note that exhibit 16 calculated the value of Keith's retention shares from 2017 through 2020 based on the December 31, 2020, market price of Union Pacific stock, despite the fact that these shares had not yet vested at that time. While a flexible approach is used to calculate parents' respective incomes for child support purposes, such calculations "'should not be based on income that is "speculative in nature and over which the employee has little or no control."'" *Vanderveer v. Vanderveer*, 310 Neb. at 218, 964 N.W.2d at 710-11. Attempting to average the value of Keith's unvested retention shares in this manner necessarily invites the speculation cautioned against by the Nebraska Supreme Court, as those shares may vest with a lower, equal, or higher value than Union Pacific's stock market price on December 31, 2020. Accordingly, we conclude the district court abused its discretion in calculating Keith's monthly income to the extent that this calculation averaged the value of Keith's unvested retention shares.

Jamie argues that this court should calculate Keith's income for child support purposes by averaging his total income from 2017 through 2021. As set forth previously, the incomes reported in Keith's W-2 forms were $249,222 in 2017; $249,386 in 2018; $253,271 in 2019; and $226,919 in 2020. Keith also testified that his 2021 income would total approximately $229,164. Adding these amounts together provides a total of

$1,207,962, and dividing that amount over 5 years results in an average annual income of $241,592.40.

Although Jamie's approach is representative of a more typical income averaging calculation, we find that this calculation would neglect the balance of equities in this case. The evidence indicates that the number of retention shares Keith has received as compensation has decreased from 550 shares in 2014 to just 34 shares in 2021. While there is also indication that the value of these shares has increased from "$134 [in December 2017] to [$]208" in December 2020, we observe that the decrease in the number of shares received has substantially surpassed the increase in the shares' market value. We further note that Keith's annual bonuses have also been steadily decreasing from $50,000 in 2018 to $24,000 in 2021. In light of the record in this case, we find that averaging Keith's income from prior years would yield an inequitable result given the substantial reduction both in his annual bonus and in the number of retention shares awarded as compensation.

[6] We note that as a general matter, the parties' current earnings are to be used in calculating child support. See *Armknecht v. Armknecht*, 300 Neb. 870, 916 N.W.2d 581 (2018). Keith affirmed that at the time of the modification hearing, he knew "almost to the dollar . . . what [he] will make in 2021," and he agreed that his total income for 2021 would be $229,164, or $19,097 per month. In consideration of the evidence regarding Keith's income, we conclude that Keith's 2021 income provides the most equitable and least speculative result in calculating child support. Accordingly, for purposes of calculating Keith's child support obligation, we determine Keith's gross monthly income to be $19,097.

### (b) Jamie's Income

In his cross-appeal, Keith argues that the district court abused its discretion in the amount of income imputed to Jamie and claims the court should have adopted his calculation of Jamie's income.

### (i) Trial Evidence

Jamie's employment with Union Pacific ended in November 2020. Jamie reported $109,668 as income in her 2019 tax return, and this matches her 2019 salary as described by her 2019 compensation statement from Union Pacific. Her 2019 compensation statement also indicates that her salary increased to $112,404 as of March 1, 2020, and her compensation for 2020 included a cash bonus of $12,000 and an award of retention shares granted on February 6 with a then-current value of $11,000. Following her termination of employment, Jamie was provided a cash severance payment of $93,670 and cash bonus of $10,000. Her severance also included "[p]rorated vesting of outstanding equity awards" from 2017 through 2019, and she received 273 vested retention shares.

### (ii) Calculation of Jamie's Income

In its order, the district court imputed $9,139 in monthly income to Jamie, finding that she "should be assessed her last year's income while employed at Union Pacific." The court further determined that Jamie's severance package, which it found to be worth approximately $130,000, should not be counted as income in the child support calculation because "it was a one-time payment."

Keith identifies that Jamie's 2020 salary and cash bonus total $124,404, and he directs this court to exhibit 18, which is a copy of his child support calculation worksheet offered as an aid to the district court. Exhibit 18 sets Jamie's income at $10,417 per month, or $125,004 annually. Keith argues that this amount is "closer" to Jamie's 2020 salary and cash bonus as set forth in her 2019 compensation statement and that exhibit 18 should therefore have been adopted. Brief for appellee on cross-appeal at 21. He also asserts that exhibit 18 "ran both parents as 'Head of Households'" and "better approximates Keith's income for child support purposes than a single tax filing status." Brief for appellee on cross-appeal at 21.

On our de novo review of the record, we find that the district court abused its discretion in imputing a gross monthly income of $9,139 to Jamie. We observe that this amount taken over 12 months equals $109,668, her reported salary for 2019. However, while it is true that Jamie's employment was terminated before she received her full 2020 salary of $112,404, we note that her earnings from March 2020 until her termination in November 2020 reflected her 2020 salary. During this timeframe, Jamie earned approximately $9,367 per month for over 6 months. We find that her most recent monthly income best represents her present earning capacity and that it would therefore be appropriate to impute $9,367 per month in gross income to Jamie. Although Keith urges this court to account for Jamie's $12,000 bonus in the calculation of her income, we conclude that it would be speculative to include this amount, as it is unclear whether Jamie's future compensation would include similar bonus payments in addition to her salary. Accordingly, we determine Jamie's monthly income to be $9,367 for purposes of calculating child support.

### 2. Other Factors in Child Support Calculation

In addition to the calculation of Keith's income, Jamie raises other issues concerning the district court's child support calculation. We proceed to examine these issues before setting forth a modified child support worksheet.

### (a) Keith's Filing Status

Jamie argues that the district court erred in determining that Keith's tax filing status was single for purposes of calculating child support. She argues that this finding was contrary to the evidence presented at trial.

In its order, the district court found in pertinent part that "although there was testimony that [Keith] has remarried, there was no evidence as to [what] his current filing status is with his new spouse. As such, [his] filing status should

be single." However, Keith testified that in addition to having remarried, he files his tax returns jointly with his current wife, and his 2018 and 2019 tax returns reflect his filing status as "Married filing jointly" with his current wife. Further, Keith's proposed child support calculation set his filing status to "Head of Household," and Jamie's proposed calculation set Keith's filing status to "Married Filing Jointly." Our de novo review of the record does not reveal any evidence supporting the district court's factual findings that there was no evidence regarding Keith's filing status with his current spouse. Accordingly, we find the district court abused its discretion in finding that Keith's tax filing status should be "Single" in the child support calculation.

[7] Jamie argues that Keith's tax filing status should be married filing jointly based on his filing status as set forth in his 2018 and 2019 tax returns. Keith conversely argues that doing so would "result in an inclusion of [his] current wife's standard tax deduction in the calculator without a determination of the actual tax rate paid by [him] and his wife on their combined gross incomes" and that this would "force[] [his] current wife to contribute to child support for her husband's children." Brief for appellee at 14. He also notes that "none of the [child support] calculator's [tax filing status] choices will result in an accurate determination of [a remarried child support obligor's] income for child support purposes." *Id.* As we further examine the arguments made by both parties, we initially note that the choice of tax filing status when running a child support calculation should correlate with a party's actual tax liability as closely as possible. In this case, the tax filing status designated in the child support calculation impacts the resulting child support owed by greater than $100 per month.

While Jamie's argument that Keith should be designated as "Married Filing Jointly" in the child support calculation is logical given the evidence that he in fact filed his tax returns using that tax filing status, our de novo review of the record compels us to conclude otherwise. We first note that the

income ranges comprising the federal tax brackets for married taxpayers filing jointly for the 2021 tax year are double the income ranges applicable to single taxpayers. See Rev. Proc. 2020-46 I.R.B. 1016, 1018-19. For example, a single taxpayer is taxed 10 percent on income up to $9,950 while married taxpayers filing jointly are taxed 10 percent on income up to $19,900. See *id.* The standard deduction for married taxpayers filing jointly is similarly double the standard deduction available to single taxpayers. See *id.* at 1022 (standard deduction for single taxpayers in 2021 is $12,550; standard deduction for married taxpayers filing jointly in 2021 is $25,100). From these figures, it is apparent that the "Married Filing Jointly" status operates on the basis that the taxable income and applicable deductions are attributable to two taxpayers. The practical effect of this arrangement is that a married couple filing jointly will generally owe less in taxes than a single taxpayer on the same amount of income. See *id.*

Keith's 2018 and 2019 tax returns indicate that he filed his taxes jointly with his current wife. However, these tax returns also account for W-2 form earnings not attributable to Keith. As described previously, Keith's W-2 forms indicate individual income of $249,386 in 2018 and $253,271 in 2019. In contrast, his joint tax returns report total W-2 form earnings of $370,386 in 2018 and $377,214 in 2019. Although the record does not contain specific evidence regarding earnings attributable to Keith's current wife, our review of the evidence in this case indicates that Keith's W-2 form earnings constitute approximately two-thirds of his total marital income.

Setting Keith's filing status to "Married Filing Jointly" for purposes of calculating his child support obligation has the effect of reducing the amount of federal income taxes deducted from his monthly income in accordance with the requirements of Neb. Ct. R. § 4-205(A) (rev. 2016). In turn, this reduced deduction would then result in a larger net income from which to calculate the amount of child support owed, resulting in a larger child support obligation. However,

using the "Married Filing Jointly" status in this instance would not be appropriate, as it significantly understates Keith's proportional share of the total joint tax liability shared with his current wife by attributing to Keith his current wife's share of their joint standard deduction without accounting for her individual income. We also note that the child support calculator provided through the Nebraska State Bar Association, and utilized by the parties, the district court, and this court, cautions against this outcome when it instructs that the "Married Filing Jointly" tax filing status should be used only "in cases of a person who will be married after entry of the final order, and their spouse does not work or produce income." While such guidance is not binding on this court, we conclude that it is instructive on this issue, and we accordingly decline to set Keith's filing status to "Married Filing Jointly" for purposes of our child support calculation.

In a similar vein, we further conclude that it would be improper to set Keith's filing status to "Single" for purposes of calculating his child support obligation. Upon examination of Keith's W-2 forms and tax returns, it is evident that his employment compensation comprises a significant majority of the total combined income with his current wife despite the decrease to his individual income after 2019. Consequently, setting his filing status to "Single" fails to account for his proportionate share of the marital standard deduction and overstates his share of federal income tax liability, resulting in a lower child support obligation that we find inappropriate in our de novo review of the record. Accordingly, we decline to set Keith's filing status to "Single" in our calculation of child support.

Keith assigned to himself the "Head of Household" filing status in his proposed child support calculation offered to the district court, and we find "Head of Household" to be the most appropriate filing status to use in calculating Keith's child support obligation. It is true that Keith does not meet the requirements for declaring this filing status for purposes

of filing a tax return under the Internal Revenue Code, primarily due to his current marriage and the evidence indicating that Keith historically exercised less overnight parenting time than Jamie. See I.R.C. § 2(b)(1)(A)(i) (2018) (individual considered head of household if such individual is not married at close of tax year and maintains household which constitutes principal place of abode for "qualifying child" as defined by I.R.C. § 152(c) (2018) if such child is not married or not exempt under § 152(b)(2) and (3)). However, for purposes of trying to correlate Keith's approximate tax liability with the filing statuses available on the child support calculator, we note that the standard deduction for the "Head of Household" filing status for the 2021 tax year is $18,800, approximately 50 percent larger than the standard deduction for single taxpayers. See Rev. Proc. 2020-46 I.R.B. at 1022. We also observe that the tax liability associated with the "Head of Household" filing status is slightly lower than the liability associated with the "Single" filing status. See *id.* at 1018-19. In other words, using "Head of Household" as a filing status for Keith in calculating child support strikes a reasonable balance between the underwithholding of taxes that would occur if we used "Married Filing Jointly" (resulting in higher child support) and the overwithholding of taxes that would occur if we used "Single" (resulting in lower child support). Accordingly, we conclude that the standard deduction and tax brackets attributed to the "Head of Household" status more closely align with Keith's proportionate share of his combined marital income and corresponding joint federal income tax obligation, and we therefore determine that Keith's filing status should be treated as "Head of Household" for purposes of our child support calculation.

As a final note on this tax filing status issue, we caution litigants and attorneys that they should not expect a trial court or appellate court to engage in mathematical and tax analyses to determine an appropriate filing status when calculating child support. If the parties are not in agreement on what

tax filing status should be used for each parent, then specific evidence must be presented to the trial court to support the tax filing status requested. In this case, we found an abuse of discretion by the district court's use of "Single" as a filing status for Keith because there was no evidence to support it and neither party requested it. However, if the district court had used a tax filing status for Keith proposed by either party and no specific evidence was adduced as to why one filing status was more appropriate than the other, we would defer to the trial court's decision and find no abuse of discretion.

#### (b) Tax Exemptions and Child Tax Credit

Jamie claims the district court improperly determined Keith's tax exemptions and failed to properly allocate the child tax credit for the parties' still eligible child.

Keith affirmed on cross-examination that he has claimed "three exemptions on [his] state taxes" each year for himself, his current wife, and Brock. His tax returns further indicate that he claimed the child tax credit for Brock in both 2018 and 2019, and Brock is the only child of the parties who remains eligible for the child tax credit.

Conversely, Jamie's tax returns indicate that she has claimed two exemptions each year for herself and Nathan. Prior to 2019, she claimed the child tax credit for Nathan; however, as of 2019, Nathan was no longer eligible for the child tax credit. In her 2019 tax return, Jamie claimed a tax credit for Nathan as a dependent.

Upon our review of the record in this case, we conclude the district court abused its discretion in allocating Keith's tax exemptions and child tax credits. No evidence was presented indicating that Keith claimed only two exemptions, and the only evidence presented regarding this issue indicated that he claimed three. Further, the parties' tax returns indicate that only Keith has claimed the child tax credit for Brock, and we see no indication that the parties ever alternated the child tax credits for their children. Accordingly, for purposes of the

calculation of Keith's child support obligation, we find that the three tax exemptions he has historically claimed and the child tax credit for Brock should be attributed to Keith.

### (c) Parties' Overnight Parenting Time

Jamie claims the district court abused its discretion in failing to account for her "additional 10 overnights per year" with the children in its calculation of child support. Brief for appellant at 24. She argues there was no dispute by the parties that she had exercised an additional 10 days of parenting time during the years prior to the modification, and the district court should have factored those additional days into its calculation of child support.

We initially note that the December 2011 decree and parenting plan effectively divided parenting time equally between the parties. Although Jamie requested modification of the parenting plan in the "Answer and Counterclaim" filed on July 22, 2020, she did not request modification of the parenting plan in the "Answer and Amended Counterclaim" filed on December 3.

There was no dispute between the parties regarding the additional overnights exercised by Jamie. The district court found that Jamie "has an expectancy of additional parenting time due to the right of first refusal utilized for [Keith's] business travel" and that "at most, [she] has had ten extra days per year with the children" prior to the modification. However, Jamie abandoned her request to modify the parenting plan, and the court did not modify the parenting plan in its order. We are not persuaded that the court's recognition that Jamie has historically exercised an additional 10 days of parenting time per year constitutes a parenting time adjustment in this case, and, as the court observed, "[Keith] testified that, if he should need to travel for work, he is able to be flexible and not lose parenting time with the children." Accordingly, we find the court did not abuse its discretion in allocating 182½ days to each party in its child support calculation. See *Hall v. Hall*, 26 Neb.

App. 877, 924 N.W.2d 733 (2019) (no basis for district court to adjust days attributed to each party in child support calculation when court found no material change in circumstances existed to warrant change in custody or adjustment to division of parenting time), *disapproved on other grounds, Fichtl v. Fichtl*, 28 Neb. App. 380, 944 N.W.2d 516 (2020).

### 3. Child Support Calculation and Cost-Sharing Division

We have concluded the district court's child support calculation included errors as described previously. We have completed our own joint custody child support calculation worksheet consistent with our findings, and this worksheet is attached to this opinion as appendix A.

Under our de novo calculation, Keith's monthly child support obligation should be $638 for two children and $426 for one child. This calculation alters the parties' division of costs for the children, with Keith responsible for 66 percent of such expenses and Jamie responsible for the remaining 34 percent.

### 4. Material Change in Circumstances

Jamie argues that a material change in circumstances has not occurred in this case to warrant modification of Keith's original child support obligation as set forth in the December 2011 decree.

[8,9] A party seeking to modify a child support order must show a material change in circumstances that (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020). Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining

a reduction in income, and whether the change is temporary or permanent. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). Neb. Ct. R. § 4-217 further provides:

> Application of the child support guidelines which would result in a variation by 10 percent or more, but not less than $25, upward or downward, of the current child support obligation, child care obligation, or health care obligation, due to financial circumstances which have lasted 3 months and can reasonably be expected to last for an additional 6 months, establishes a rebuttable presumption of a material change of circumstances.

As described above, we have calculated Keith's modified child support obligation to be $638 for two children. The dissolution court initially calculated Keith's child support obligation for two children to be $394.72 per month under the Nebraska Child Support Guidelines based on the expiration of his annuity income and the emancipation of his child from a prior marriage. However, the December 2011 decree imposed an upward deviation to Keith's child support obligation and ordered Keith to pay $1,000 per month in child support for two children beginning on June 1, 2013.

Given the changes in Keith's income and our resulting child support calculation, we find that the evidence in this case establishes the rebuttable presumption set forth in § 4-217. At the time of the district court's modification, Keith's 2021 salary had been in effect for 3 months, and his testimony on cross-examination indicated that there was no dispute that his 2021 income would remain stable for the remainder of the year. Accordingly, we find that Keith's change in financial circumstances had lasted for 3 months and could be reasonably expected to last for an additional 6 months. Further, regardless of whether we compare our calculation of Keith's child support to the December 2011 decree's upward deviation or the dissolution court's preliminary calculation under the child support guidelines, the 10-percent upward or downward variation requirement of § 4-217 has been satisfied in this case.

Jamie argues that the application of the § 4-217 presumption in this case is barred by this court's holding in *Brodrick v. Baumgarten*, 19 Neb. App. 228, 809 N.W.2d 799 (2011). In *Brodrick v. Baumgarten*, the parties had divorced in 2001 and subsequently entered into a stipulated modification in which they agreed, in pertinent part, that the father would pay $200 per month in child support, and this amount was a deviation from the guidelines. Less than 5 months later, the father sought further modification based in part on alleged changes to his financial circumstances. Specifically, the father alleged that his employment had changed from full-time to part-time employment, although his pay rate remained $10 per hour. Despite these alleged changes, the father asked the court to impute an income of $10 per hour for full-time employment, which was his income at the time of the first modification. The district court found that a material change in circumstances had occurred and calculated the father's new support obligation under the guidelines to be $3.12. However, the court found this amount to be minimal and terminated the father's support obligation.

On appeal, this court reversed the district court's modification. We concluded that a material change in circumstances had not occurred concerning the father's financial circumstances because he "specifically asked the court to impute his income level as $10 per hour for full-time employment" in the second modification and this "was identical to his earning level at the time of the prior order." *Brodrick v. Baumgarten*, 19 Neb. App. at 233, 809 N.W.2d at 803. Given those facts, this court found it improper to apply the presumption set forth in § 4-217 to the circumstances, as the father's child support obligation of $200 per month under the prior order was a deviation he stipulated to and was already "more than a 10-percent variation from the amount the guidelines would have required." *Brodrick v. Baumgarten*, 19 Neb. App. at 233, 809 N.W.2d at 803.

[10] Jamie argues that *Brodrick v. Baumgarten, supra*, "makes clear that Keith's higher income cannot constitute

a material change in circumstances to lower his stipulated support obligation" and that "if a child support payor's income is equal to or greater than the payor's income at the time of the last support order, then the § 4-217 presumption is effectively rebutted." Brief for appellant at 29. However, Jamie's argument misappropriates this court's reasoning. We read *Brodrick v. Baumgarten, supra*, to stand for the proposition that when a prior order of child support constitutes a deviation from the Nebraska Child Support Guidelines, a party may not seek modification of that order solely on the basis that the guidelines would result in a different child support amount. Fundamental to this court's analysis in *Brodrick v. Baumgarten, supra*, was the fact that the father's imputed income was equal to his income at the time of the prior order, which meant that there had been no change in his financial circumstances to begin with. In contrast, the record presently before this court makes clear that Keith's financial circumstances have changed since the entry of the December 2011 decree. Accordingly, the reasoning underpinning our decision in *Brodrick v. Baumgarten, supra*, is not applicable to the present case.

Further evidence also supports a finding of a material change in circumstances. In addition to the changes in the parties' individual financial circumstances, the evidence indicates that the circumstances surrounding the children's expenses, which formed the basis of the upward deviation, have changed. The upward deviation in the December 2011 decree accounted for approximately $600 in additional monthly child support, and this deviation was intended for Jamie to unilaterally cover the children's expenses as set forth in the decree. The evidence presented at trial indicates that Jamie was paying approximately $280 per month in direct expenses for Nathan and Brock in the years leading up to this modification action. Conversely, Jamie did not dispute that Keith had been paying approximately $440 per month throughout 2020 for Nathan's car payments and cell phone, as well as other miscellaneous

items for both sons, and these expenses were in addition to his child support payments. In light of our modified child support calculation and the evidence of the changes in the parties' financial circumstances and cost-sharing arrangement, we conclude that there has been a material change in circumstances warranting modification of Keith's child support obligation. Accordingly, we modify the district court's order to reflect our child support calculation as set forth in appendix A.

## 5. RETROACTIVE MODIFICATION

Jamie claims the district court erred in ordering Keith's modified child support to be retroactive to July 1, 2020, without also retroactively modifying the parties' cost-sharing responsibilities and Jamie's requirement under the December 2011 decree to cover direct expenses for the children. She argues that Keith would be provided an unfair windfall if he is also not required to cover his share of the expenses unilaterally covered by Jamie from July 1, 2020, until April 1, 2021.

[11-13] In determining whether to order a retroactive modification of child support, a court must consider the parties' status, character, situation, and attendant circumstances. *Johnson v. Johnson*, 290 Neb. 838, 862 N.W.2d 740 (2015). Absent equities to the contrary, modification of a child support order should be applied retroactively to the first day of the month following the filing day of the application for modification. *Id.* The initial determination regarding the retroactive application of a modification order is entrusted to the discretion of the trial court and will be affirmed on appeal absent an abuse of discretion. *Bowmaker v. Rollman*, 29 Neb. App. 742, 959 N.W.2d 819 (2021).

As previously described, the record indicates that Jamie was unilaterally paying approximately $280 per month in direct expenses for Nathan and Brock. The record also indicates that Keith was unilaterally paying approximately $440 per month in direct expenses for Nathan and Brock. Added together, these amounts reflect monthly expenditures of approximately

$720. When factoring in each party's percentage share of expenses under our modified child support calculation, Keith would have been responsible for approximately $475 of these monthly expenditures while Jamie would have been responsible for $245. While the parties' unilateral payments do not perfectly align with their percentage shares of expenses for the children under our modified child support calculation, we cannot say it was an abuse of discretion for the district court to not modify the parties' cost-sharing arrangement to be retroactive to July 1, 2020, based on their respective payments for their children's expenses.

## VI. CONCLUSION

For the reasons set forth above, we modify the district court's order so that Keith's modified child support obligation is consistent with the worksheet attached to this opinion. We affirm the remainder of the district court's order.

AFFIRMED AS MODIFIED.

(*See pages 65-66 for appendix A.*)

# APPENDIX A

Case Name: Maskil-Cronin v. Cronin
Worksheet 1 - Basic Income and Support Calculation

Mother: Head of Household / 2 Exemptions / Railroad Retirement
Father: Head of Household / 3 Exemptions / Railroad Retirement

| Line | Description | Mother | Father |
|------|-------------|--------|--------|
| 1 | Gross Earned Taxable Income | $9,367.00 | $19,097.00 |
| 1 | Gross Unearned Taxable Income | $0.00 | $0.00 |
| 1 | Tax-Exempt Income | $0.00 | $0.00 |
| 2.a | Taxes - Federal | $1,252.83 | $3,893.53 |
| 2.a | Taxes - Nebraska | $442.59 | $1,096.70 |
| 2.b | FICA - Social Security / Railroad Retirement* | $1,014.40* | $1,171.45* |
| 2.b | FICA - Medicare | $135.82 | $298.78 |
| 2.c | Retirement | $374.68 | $763.88 |
| 2.d | Previously Ordered Support | $0.00 | $0.00 |
| 2.e | Regular Support for Other Children | $0.00 | $0.00 |
| 2.f | Health Insurance Premium for Parent | $0.00 | $0.00 |
| | Other Deductions | $0.00 | $0.00 |
| | Child Tax Credit | ($0.00) | ($166.67) |
| 2.g | Total Deductions | $3,220.32 | $7,057.67 |
| 3 | Net Monthly Income | $6,146.68 | $12,039.33 |
| 4 | Combined Net Monthly Income | $18,186.01 | |
| 5 | Combined Net Annual Income | $218,232.08 | |
| 6 | Each Parent's Percent | 33.8% | 66.2% |
| 7 | Monthly Support from Table (2 Children) | $2,970.00 | |
| 8 | Health Insurance Premium for Children | $0.00 | $248.00 |
| 9 | Total Obligation | $3,218.00 | |
| 10 | Each Parent's Monthly Share | $1,087.68 | $2,130.32 |
| 11 | Credit For Health Insurance Premium Paid | ($0.00) | ($248.00) |
| 12 | Each Parents' Final Share (2 Children, rounded) | $1,088.00 | $1,882.00 |

Worksheet 4 - Number of Children Calculation (final shares are rounded to the nearest whole dollar)

| No. Children | Table Amt. | Table + Health Ins. | Mother's Share of Total | Father's Share of Total | Mother's Final Share | Father's Final Share |
|------|-------|-------|-------|-------|-------|-------|
| 2 | $2,970.00 | $3,218.00 | $1,087.68 | $2,130.32 | $1,088.00 | $1,882.00 |
| 1 | $2,099.00 | $2,347.00 | $793.29 | $1,553.71 | $793.00 | $1,306.00 |

Worksheet 3 - Joint Physical Custody (2 Children)

| Line | Description | Mother | Father |
|------|-------------|--------|--------|
| 1 | Each Parent's Percent Contribution | 33.8% | 66.2% |
| 2 | Monthly Support (Worksheet 1 Line 7) | $2,970.00 | |
| 3 | Joint Physical Support (Line 2 * 1.5) | $4,455.00 | |
| 4 | Each Parent's Share (Line 1 * Line 3) | $1,505.79 | $2,949.21 |
| 5 | No. Days Custody | 182.5 | 182.5 |
| 6 | Percentage of Year (Line 5 / 365) | 50% | 50% |
| 7 | Mother's Obligation to Father | $752.90 | |
| 8 | Father's Obligation to Mother | | $1,474.61 |
| 9 | Father's Obligation for Support | $721.71 | |
| 10 | Children's Health Insurance Premium | $0.00 | $248.00 |
| 11 | Combined Children's Health Insurance Premiums | $248.00 | |
| 12 | Each Parent's Share of Premium (Line 11 * Line 1) | $83.82 | $164.18 |
| 13 | Amount of Premium Paid (Line 10) | $0.00 | $248.00 |
| 14 | Amount Owed to Other Parent (Line 12 - Line 13) | $83.82 | $0.00 |
| 15.a | Which Parent Owes Basic Support | Father | |
| 15.b | Which Parent Owes for Health Insurance | Mother | |
| 15.c | Does the Same Parent Owe on Lines 15a and 15b | No | |
| 16 | Total Support Owed by Father (rounded) | $638.00 | |

Worksheet 3 - Joint Physical Custody (1 Child)

| Line | Description | Mother | Father |
|------|-------------|--------|--------|
| 1 | Each Parent's Percent Contribution | 33.8% | 66.2% |
| 2 | Monthly Support (Worksheet 1 Line 7) | $2,099.00 | |
| 3 | Joint Physical Support (Line 2 * 1.5) | $3,148.50 | |
| 4 | Each Parent's Share (Line 1 * Line 3) | $1,064.19 | $2,084.31 |
| 5 | No. Days Custody | 182.5 | 182.5 |
| 6 | Percentage of Year (Line 5 / 365) | 50% | 50% |
| 7 | Mother's Obligation to Father | $532.10 | |
| 8 | Father's Obligation to Mother | | $1,042.15 |
| 9 | Father's Obligation for Support | $510.06 | |
| 10 | Children's Health Insurance Premium | $0.00 | $248.00 |
| 11 | Combined Children's Health Insurance Premiums | $248.00 | |
| 12 | Each Parent's Share of Premium (Line 11 * Line 1) | $83.82 | $164.18 |
| 13 | Amount of Premium Paid (Line 10) | $0.00 | $248.00 |
| 14 | Amount Owed to Other Parent (Line 12 - Line 13) | $83.82 | $0.00 |
| 15.a | Which Parent Owes Basic Support | Father | |
| 15.b | Which Parent Owes for Health Insurance | Mother | |
| 15.c | Does the Same Parent Owe on Lines 15a and 15b | No | |
| 16 | Total Support Owed by Father (rounded) | $426.00 | |