Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/13/2026 08:07 AM CDT

Laura A. Kingston, appellee and cross-appellant,
v. Trevor L. Kingston, appellant
and cross-appellee.

___ N.W.3d ___

Filed March 13, 2026.    No. S-25-050.

1. **Modification of Decree: Child Support: Appeal and Error.** Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, an appellate court will affirm the trial court's decision absent an abuse of discretion.

2. **Child Support: Appeal and Error.** Whether a child support order should be retroactive is entrusted to the discretion of the trial court, and an appellate court will affirm its decision absent an abuse of discretion.

3. **Modification of Decree: Attorney Fees: Appeal and Error.** In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion.

4. **Modification of Decree: Child Support: Proof.** A party seeking to modify a child support order must show a material change in circumstances that (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered.

5. **Modification of Decree: Child Support.** Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent.

6. **Trial: Appeal and Error.** A party cannot be heard to complain of an error which the party was instrumental in bringing about.

7. **Modification of Decree: Child Support: Time.** Absent equities to the contrary, modification of a child support order should be applied

retroactively to the first day of the month following the filing date of the application for modification.

8. **Modification of Decree: Child Support.** In determining whether to order a retroactive modification of child support, a court must consider the parties' status, character, situation, and attendant circumstances.

Appeal from the District Court for Douglas County: W. Russell Bowie III, Judge. Affirmed.

Kathryn D. Putnam, of Astley Putnam, P.C., L.L.O., for appellant.

Benjamin M. Belmont and Mariah E. Shaffer, of Brodkey, Cuddigan, Peebles, Belmont & Line, L.L.P., for appellee.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, Bergevin, and Vaughn, JJ.

Papik, J.

When Trevor L. Kingston and Laura A. Kingston divorced, the dissolution decree ordered Trevor to pay Laura child support. In calculating Trevor's child support obligation, the district court did not count as income restricted stock units (RSUs) Trevor received from his employer. Laura later sought an order modifying Trevor's child support obligation, primarily arguing that his child support obligation should be recalculated with the RSUs included as income. After a trial held before a child support referee, the referee concluded that Trevor's sales of his RSUs after the entry of the dissolution decree constituted a material change in circumstances and that the RSUs should be counted as income. The district court adopted the referee's recommendation and increased Trevor's child support obligation. Trevor now appeals, and Laura cross-appeals. We affirm.

## BACKGROUND

*Initial Dissolution Proceedings; Appeal.*

In 2021, Trevor and Laura divorced, having two children under the age of 18 at the time. In calculating Trevor's child

support obligation, the district court included his salary and bonuses as income. The district court did not count as income RSUs Trevor received from his employer as compensation. RSUs are shares of stock of Trevor's employer that vest several years after they are initially issued. These shares, which have long been part of Trevor's compensation, are given as an incentive to remain with the employer. If an employee leaves before RSUs vest, the employee does not receive those shares of stock.

In the dissolution decree, the district court ordered Trevor to pay $667 per month in child support until the older child reached the age of majority and then $444 per month until the younger child reached the age of majority. Although not counted as income, the district court divided Trevor's RSUs as part of the marital estate.

Following the entry of the dissolution decree and the filing of some posttrial motions, Laura filed an appeal. She asserted several assignments of error, including a claim that the district court erred in calculating Trevor's child support obligation. Trevor also assigned several errors in a cross-appeal. The Nebraska Court of Appeals, however, dismissed both Laura's appeal and Trevor's cross-appeal for lack of jurisdiction. See *Kingston v. Kingston*, 31 Neb. App. 201, 979 N.W.2d 277 (2022).

*Modification Proceedings.*

In April 2023, after the dismissal of the appeal and cross-appeal, Laura filed a complaint to modify the divorce decree, arguing she was entitled to a higher child support payment. In her complaint to modify, Laura identified material changes in circumstances that would support modification. Among the material changes in circumstances alleged was an assertion that modification was warranted based on this court's decision in *Vanderveer v. Vanderveer*, 310 Neb. 196, 964 N.W.2d 694 (2021), which was handed down after the original divorce decree was entered. Laura requested that any adjustment to

Trevor's child support obligation be made retroactive to May 2023, the month after she filed the complaint to modify. Upon a joint motion of the parties, the district court directed that the case be assigned to a child support referee to conduct a hearing and make findings and recommendations.

The referee held a hearing at which both Trevor and Laura testified and the parties submitted other evidence. At the hearing, Trevor testified that during the parties' marriage, he never sold any of the RSUs he received, instead treating them as a "retirement vehicle." Trevor acknowledged, however, that he sold RSUs after the dissolution decree was entered.

Trevor also testified that he believed it would be inequitable if the district court modified his child support obligation retroactively to the month after Laura filed the complaint to modify. He testified that he had not budgeted for having to make retroactive payments and that he would have to sell additional RSUs and incur additional capital gains taxes to meet his obligations if the child support obligations were made retroactive.

After the hearing, the referee issued a report recommending that Trevor's child support obligation be increased. The referee determined in its report that the doctrine of issue preclusion did not prevent Laura from seeking to modify Trevor's child support obligation. The referee also concluded that Trevor's sales of his RSUs after the dissolution decree was entered "constitute[d] a material change of circumstances as it pertains to the question of a child support modification." The referee explained that "[i]t would not be logical" to include RSUs as income at the time of the dissolution decree when Trevor was keeping them for retirement, rather than selling them, but found that after Trevor sold the RSUs for 3 years after the decree, "the funds should be included as income for child support purposes."

Having determined that modification was appropriate, the referee next considered the amount by which to increase the child support obligation. To do so, the referee first determined each

party's income. The referee found that Laura received only disability payments that totaled a little under $5,000 a month. The referee acknowledged that Laura had received some of Trevor's RSUs but did not count them as income because she would not receive them under the decree beyond 2025.

The referee found that Trevor's income should include three components: salary, bonuses, and RSUs. To determine his income from the bonuses, the referee averaged his bonuses from the prior 3 years, which were $45,000 in 2022, $47,500 in 2023, and $34,000 in 2024. At the hearing, Trevor had testified that his bonus pay should be averaged because it is a "better reflection over time of how much [he's] getting paid."

To determine the income to attribute to Trevor for the sales of the RSUs, the referee multiplied the average number of shares that vested for the prior 3 years by the average vested market price. The referee did so, even though, pursuant to the dissolution decree, Laura received some of the RSUs in the years considered. In explaining this aspect of the recommendation, the referee stated that "[t]he purpose of averaging the income amounts from RSU sales is not to assess that amount to [Trevor] as past income, but rather to arrive at a baseline for the income [Trevor] will likely receive from the sale of RSUs going forward." The referee noted that under the decree, Laura would not be entitled to additional RSUs after early 2025.

In calculating the parties' income, the referee also deducted just over $1,000 from Trevor's monthly income to represent capital gains taxes Trevor incurred for the RSUs. Based on its determinations of the parties' incomes, and through use of an attached child support worksheet, the referee recommended that Trevor's child support payment be increased to $1,123 per month while both children were under the age of majority and then to $774 per month after the older child reached the age of majority.

The referee recommended declining Laura's request to make the child support payments retroactive to May 2023.

The referee also recommended declining Trevor's request that any modified child support obligation not be made retroactive at all. Instead, the referee recommended that the modified child support obligation be made retroactive to February 2024. The referee also recommended that both parties be ordered to pay their own attorney fees.

Both Trevor and Laura filed exceptions to the referee's report. Among the exceptions Trevor took to the referee's report was a contention that the referee should have set deadlines by which the parties would be required to submit requests and reimburse each other for the children's expenses. During the modification hearing, both parties claimed they had incurred certain expenses on behalf of the children for which the other party did not reimburse them as required by the decree.

Following a hearing, the district court adopted the referee's recommendation in full. Trevor appeals, and Laura cross-appeals.

## ASSIGNMENTS OF ERROR

Trevor assigns six errors on appeal. We paraphrase and reorder those assignments as follows: The district court erred (1) by determining that *Vanderveer v. Vanderveer*, 310 Neb. 196, 964 N.W.2d 694 (2021), constituted "new law" in the State of Nebraska for purposes of modification; (2) by finding that Laura showed a material change in circumstances warranting modification of Trevor's child support obligation; (3) by finding that Laura's attempt to have Trevor's RSUs counted as income was not barred by preclusion doctrines; (4) by counting the RSUs as income; (5) in its calculation of Trevor's income; and (6) in failing to set timeframes for the parties to request and make reimbursements for the children's expenses.

On cross-appeal, Laura assigns that the district court abused its discretion (1) by failing to apply the new child support obligation retroactively to the month following the filing of

the complaint for modification and (2) by failing to award attorney fees to Laura.

## STANDARD OF REVIEW

[1,2] Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, we will affirm the trial court's decision absent an abuse of discretion. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013). Whether a child support order should be retroactive is also entrusted to the discretion of the trial court, and we will affirm its decision absent an abuse of discretion. *Id.*

[3] In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020).

## ANALYSIS

*Material Change in Circumstances.*

[4] We first address Trevor's assignments of error pertaining to whether Laura demonstrated a material change in circumstances that would permit modification of Trevor's child support obligation. A party seeking to modify a child support order must show a material change in circumstances that (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered. *Hotz v. Hotz*, 301 Neb. 102, 917 N.W.2d 467 (2018).

Trevor devotes much of his brief on appeal to an argument that the referee, and, by extension, the district court, erred by finding that our opinion in *Vanderveer, supra*, constituted a material change in circumstances. He argues that *Vanderveer* did not recognize any new principle of law and therefore could not serve as the basis for a modification of his child support obligation.

Trevor's argument, however, ignores the actual material change in circumstances found by the referee. The referee did not find that our opinion in *Vanderveer* constituted a material change in circumstances. It found that Trevor's postdecree sales of his RSUs—after never selling the RSUs during the marriage—amounted to a material change in circumstances.

[5] Trevor's briefs on appeal make little to no effort to demonstrate that it was error to find that his postdecree sales were a material change in circumstances. In any event, we discern no abuse of discretion in that conclusion. Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). Here, Trevor's sales of the RSUs occurred after the entry of the dissolution decree and there is no indication that sales of the RSUs were contemplated when the decree was entered. Furthermore, the sales of the RSUs changed Trevor's financial position as they provided him with additional funds that could be spent. The referee also found that sales occurred in 3 different years, a factor that cuts against a finding that the change was merely temporary.

Because we find no error in the district court's conclusion that Trevor's selling of the RSUs constituted a material change in circumstances, we need not address Trevor's argument that our decision in *Vanderveer* did not recognize new principles of law.

*Preclusion.*

In addition to arguing that there was no material change in circumstances that would permit modification of his child support obligation, Trevor argues that the doctrines of issue and claim preclusion barred Laura from seeking modification

on the ground that Trevor's RSUs should be included as income. Trevor argues that because the district court, when it entered the dissolution decree, rejected Laura's contention that Trevor's RSUs should be counted as income, preclusion doctrines bar her from relitigating that issue in a modification proceeding. We find no merit to Trevor's argument.

As we just discussed, a party seeking to modify a child support order must demonstrate that there has been a material change in circumstances since the entry of the initial order. As we will explain, however, when such a material change is demonstrated, claim and issue preclusion have no role to play.

Although we have specifically recognized that the doctrine of claim preclusion will not apply when there has been an intervening change in facts or circumstances, see *Ichtertz v. Orthopaedic Specialists of Neb.*, 273 Neb. 466, 730 N.W.2d 798 (2007), and *Moulton v. Board of Zoning Appeals*, 251 Neb. 95, 555 N.W.2d 39 (1996), that "exception" naturally follows from a straightforward application of the doctrines of issue and claim preclusion.

Issue preclusion applies only where "an identical issue was decided in a prior action." *Hara v. Reichert*, 287 Neb. 577, 581, 843 N.W.2d 812, 816 (2014). But when there has been a material change in circumstances, a new issue is presented, so the identical issue would not have been decided in the prior action. And while claim preclusion bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in the prior action, see, e.g., *Schaeffer v. Frakes*, 313 Neb. 337, 984 N.W.2d 290 (2023), an issue could not have been litigated in the prior action if it depends on circumstances that came about after that action was decided. This case illustrates the point. The issue in the modification proceeding was whether the RSUs should be counted as income after Trevor started selling them post-decree. That issue was not and could not have been decided in the initial dissolution proceeding.

We often say that in proceedings on a complaint to modify, proof of a material change in circumstances is a "threshold inquiry" because issues determined in a prior decree or order "are deemed preclusive *in the absence of proof of new facts and circumstances*." *Weaver v. Weaver*, 308 Neb. 373, 388, 954 N.W.2d 619, 630 (2021) (emphasis supplied). Where there has been proof of new facts and circumstances, however, issues determined in the prior decree or order are not preclusive.

*Inclusion of RSUs as Income.*

Trevor also argues that even if there was a material change in circumstances, it was still error for the district court to count the RSUs as income for purposes of child support. Here, Trevor principally argues that his case is distinguishable from *Vanderveer*. In *Vanderveer*, we held that the district court abused its discretion when it failed to attribute any income to the husband for RSUs he received as compensation from his employer. The evidence in that case showed that the husband annually received RSUs from his employer and that each year, he sold vested RSUs and, "as a result, . . . receive[d] significant income above and beyond his base salary and annual bonus." *Vanderveer*, 310 Neb. at 218, 964 N.W.2d at 711. We held that there was "no principled reason to exclude all RSU income from the child support calculation." *Id.* at 220, 964 N.W.2d at 712. We reversed the decree in part and remanded the cause to the district court for it to recalculate child support without excluding all income from RSUs.

Trevor attempts to draw a contrast between himself and the husband in *Vanderveer*. He argues that the husband in *Vanderveer* routinely sold his RSUs while Trevor did not. He also argues that in this case, the RSUs were divided as part of the dissolution decree. We are not persuaded that it was an abuse of discretion to include Trevor's RSUs as income. As we have discussed, Trevor sold RSUs following the entry of the decree. In addition, we rejected in *Vanderveer* an argument that "when calculating child support, courts must make

a binary choice between classifying something as marital property subject to equitable division and considering it as income for purposes of child support." 310 Neb. at 219, 964 N.W.2d at 711. Instead, we emphasized that we take a "flexible approach" to determining income for purposes of child support to account for "the wide variety of circumstances that may be present." *Id.*

Given the flexibility afforded to the district court in determining Trevor's income and the fact that he, like the husband in *Vanderveer*, sold vested RSUs and thereby received funds in addition to his salary and bonus, we see no basis on which to conclude that the district court abused its discretion by including Trevor's RSUs when determining income for purposes of calculating child support.

*Calculation of Trevor's Income.*

Trevor also assigns error to the district court's calculations of his income. Specifically, he asserts that the district court erred in choosing to average his bonus pay, in the amount it attributed to Trevor for his RSUs, and in its treatment of taxes for the RSUs. None of these arguments convince us the district court abused its discretion.

[6] Trevor first argues that the district court should not have averaged Trevor's bonus income. It is a general rule, however, that a party cannot be heard to complain of an error which the party was instrumental in bringing about. *City of Omaha Human Relations Dept. v. City Wide Rock & Exc. Co.*, 201 Neb. 405, 268 N.W.2d 98 (1978). Here, Trevor testified that his bonus pay should be averaged. And even if we were to consider Trevor's argument on the merits, we would not find an abuse of discretion. This court has acknowledged that when a party's income has fluctuated during "the immediate past 3 years, the income may be averaged." *Gress v. Gress*, 274 Neb. 686, 692, 743 N.W.2d 67, 73 (2007) (internal quotation marks omitted). See Neb. Ct. R. ch. 4, art. 2, worksheet 1, n.5 (rev. 2016). Trevor's bonus pay was $45,000

in 2022, $47,500 in 2023, and $34,000 in 2024. Based on these amounts, it was not clear that Trevor's income was consistently increasing or decreasing. When presented with this type of fluctuation, Nebraska law allows for an averaging of incomes. See *Gress v. Gress, supra.* See, also, *Peter v. Peter*, 262 Neb. 1017, 637 N.W.2d 865 (2002) (holding that income averaging should not be used when income is consistently increasing).

Trevor also asserts that the district court erred in calculating the amount of income attributable to the RSUs. First, Trevor relies on *Cronin v. Cronin*, 31 Neb. App. 38, 977 N.W.2d 273 (2022), to argue that averaging the RSUs by price and quantity involves unnecessary speculation. Second, he argues that in the years the district court used for its calculation of the RSUs, some of the RSUs went to Laura and therefore should not have been counted as his income. We find no abuse of discretion.

We find *Cronin* distinguishable. In that case, the Court of Appeals was troubled by the district court's "[a]ttempting to average the value of [a party's] unvested [RSUs]." *Id.* at 49, 977 N.W.2d at 283. The Court of Appeals explained that it was not known at what price those shares would later vest. Here, the referee calculated Trevor's income from the RSUs with reference to shares that had vested.

We also find no abuse of discretion in counting all of Trevor's RSUs even though Laura received some of the RSUs in the preceding 3 years. As the referee explained, Laura would receive the last RSUs pursuant to the decree in early 2025. The referee did not subtract the shares Laura had received in earlier years because an attempt was being made to assess the RSUs Trevor would receive going forward. This was not untenable or unreasonable and therefore not an abuse of discretion.

Trevor finally argues that his child support obligation was calculated through the referee's application of "an unnecessarily complicated tax effect" to the income from the RSUs. Brief for appellant at 34. Trevor's argument on this point,

however, is difficult to track. He appears to argue that he should have received a different deduction for taxes because he claims his RSUs are taxed as ordinary income, rather than as capital gains, and because he paid income tax on shares that Laura received in the years prior to the district court's modification order. He does not explain, however, how a different tax rate would have affected the deduction, nor does he explain why his payment of taxes for Laura in past years should affect his child support obligations going forward. We discern no abuse of discretion in the way the referee accounted for Trevor's tax obligations.

*Reimbursement Deadline.*

Trevor's final assignment of error is that the district court should have set deadlines for the parties to submit reimbursement requests for the children's expenses to each other and to make required reimbursements. Although the decree requires reimbursement, it does not include deadlines by which reimbursement is to be requested and paid. Trevor argues the district court erred by not setting such deadlines.

Trevor is contending that the district court should have modified the decree to include deadlines for reimbursement. Trevor, however, did not file a complaint to modify the decree. He does not explain what would have authorized the district court to modify the decree in the manner he suggests, much less what would have obligated it to do so. The district court did not err by not modifying the decree in the manner Trevor argues.

*Retroactivity.*

Having addressed Trevor's assignments of error, we turn to the errors Laura assigns in her cross-appeal. She first takes issue with the district court's decision to make the child support payments retroactive to February 2024. Although the district court ordered the increase in child support obligations to be made retroactive, she argues that the increase in child

support obligation should have been made retroactive to May 2023—the first month following the complaint to modify.

[7,8] Absent equities to the contrary, modification of a child support order should be applied retroactively to the first day of the month following the filing date of the application for modification. *Johnson v. Johnson*, 290 Neb. 838, 862 N.W.2d 740 (2015). In determining whether to order a retroactive modification of child support, a court must consider the parties' status, character, situation, and attendant circumstances. *Id.* One of the factors to consider is the ability to pay. See *Wilkins v. Wilkins*, 269 Neb. 937, 697 N.W.2d 280 (2005).

Laura argues that the above-mentioned precedent establishes that the district court should have made the payments retroactive to May 2023. We find no abuse of discretion. District courts are not restricted to making child support obligations retroactive to the month after the complaint was filed or imposing no retroactivity at all. If equity requires, it is within a district court's discretion to make the payments retroactive to a date other than the month after the complaint was filed. Given Trevor's testimony that he would have had to sell additional RSUs and incur additional capital gains taxes to meet his obligation if the modified payments were made retroactive to May 2023, we find no abuse of discretion in the district court's making the payments retroactive to February 2024.

*Attorney Fees.*

Laura also asserts in her cross-appeal that the district court erred by failing to award her attorney fees. While a district court can award attorney fees in proceedings where a party seeks to modify a dissolution decree, the decision of whether to award such fees is committed to the district court's discretion. See *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). Laura argues that attorney fees should be awarded here because it took nearly 18 months for the complaint to modify to be litigated in the district court. Because we

believe the district court could have concluded that both parties bore some responsibility for the time it took to resolve this matter in the district court, we find no abuse of discretion in the district court's decision to have both parties pay their own attorney fees.

## CONCLUSION

Finding no merit to the errors assigned in Trevor's appeal or Laura's cross-appeal, we affirm.

Affirmed.